Filed 11/15/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SOFIA SORIA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>UNIVISION RADIO LOS ANGELES,<br>INC., et al.,<br><br>    Defendants and Respondents. | B263224<br><br>(Los Angeles County<br>Super. Ct. No. BC499492) |

APPEAL from a judgment of the Superior Court for the County of Los Angeles, Yvette M. Palazuelos, Judge.  Reversed and remanded.

The deRubertis Law Firm, David M. deRubertis and Kelly A. Knight, Lavi & Ebrahimian, N. Nick Ebrahimian for Plaintiff and Appellant.

Venable, Daniel P. Hoffer and Robert H. Pepple for Defendants and Respondents.

_____

Sofia Soria, a former on-air radio personality for Univision Radio Los Angeles, Inc. and Univision Communications, Inc. (collectively Univision), appeals from the judgment entered after the trial court granted summary judgment in favor of Univision in Soria's action for disability discrimination, wrongful termination and related employment claims. Because material issues of fact exist regarding each of Soria's claims, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Soria's Employment at Univision*

Soria worked for Univision as an on-air radio personality from 1997 until her termination in November 2011. Soria had three direct supervisors during the relevant time period: Fernando Perez prior to April 2011, Haz Montana from April to August 2011 and Maria Nava from August to November 2011. In addition, Montana was Soria's second-level supervisor throughout 2011.

For nine years preceding her termination, Soria hosted the mid-day radio show on a Univision radio station in Los Angeles. Soria was scheduled to be in the radio booth from 10 a.m. to 3:00 p.m. during which time she spoke on the air between songs and commercials, took calls from listeners and announced promotions and giveaway winners. Soria was expected to arrive at the station approximately 30 minutes in advance of going on the air in order to review the "audio log," which indicated how many times per hour she would speak that day and for how long each time. Soria was also expected to use this pre-air time to research relevant topics and prepare what she would discuss on the air.

2. *Soria's Tumor Diagnosis*

In 2007 Soria was diagnosed with a small tumor at the junction of her esophagus and stomach. Testing showed the tumor to be benign, and Soria was told that no treatment was necessary at that time. In August 2010 Soria experienced nausea and vomiting and returned to the doctor for further examination. Soria testified the doctors again told her the tumor was benign, but that she should either have it removed or return every three to six months for monitoring. Soria opted to return for monitoring rather than undergo surgery.

2

In October 2011 medical tests revealed Soria's tumor had grown, and her doctors stated malignancy could not be definitively ruled out. As such, on October 14, 2011 Dr. Harmik Soukiasian recommended she have the tumor removed "in the next few weeks" and stated removal "should not be put off any longer." On that same day Soria was evaluated by Dr. Miguel Burch, who concurred with Dr. Soukiasian and stated he was "fairly emphatic about the fact that the mass must be removed."

Still unsure about whether to have the surgery, Soria sought a third opinion on November 2, 2011 from Dr. Marvin Derezin. Dr. Derezin stated in his contemporaneous medical report that he believed the tumor was "most likely" benign. However, Dr. Derezin wrote he believed the tumor should be removed so that Soria would no longer be concerned about it. In December 2011 Soria saw yet another doctor, Dr. Formosa Chen, who also believed the tumor was benign. While Dr. Chen presented Soria with the option of continuing to monitor the tumor, Dr. Chen ultimately recommended removal of the mass in order to "definitively diagnose this lesion, as well as to give the patient peace of mind." Dr. Chen stated in her report that Soria had not yet decided whether to have the surgery but would continue to think about it. Soria ultimately had the tumor removed in April 2012, after the termination of her employment, at which time tests showed that the tumor was not cancerous.

It is undisputed Soria had no physical symptoms as a result of her tumor that interfered with her ability to perform her job duties. Soria experienced some pain on the right side of her torso, but did not know whether it related to her tumor. There was no evidence the pain or any other symptom inhibited her ability to work. In addition, Dr. Derezin and Dr. Chen both noted in their examination reports that the tumor was asymptomatic.

3. *Soria's Communications with Supervisors Regarding Medical Appointments and Diagnosis*

It is undisputed that between May 2011 and November 2011 Soria missed work or arrived late nine times due to doctor appointments related to her tumor. On each occasion Soria notified her supervisor(s) in advance and requested permission for the

time off. Each request was granted. Most of the emails and text messages in which Soria requested time off simply stated she had a doctor's appointment. However, in one email to supervisor Montana on September 23, 2011, Soria wrote she would be absent one day the following week due to a "biopsy."

In addition to emails requesting time off, Soria testified she had three or four conversations with Nava in 2011 regarding her appointments and diagnosis. Specifically, Soria stated in September or October 2011 she told Nava she had a tumor and her doctors recommended the tumor be removed, which would require major surgery, including cutting off part of her stomach and esophagus. Soria testified Nava had cried during this conversation, said her brother had died of cancer and recommended a specific doctor and hospital to Soria. Soria further testified that Nava sent her a text message on September 30, 2011, the day of her biopsy, in which Nava wrote, "I wish you luck today. May I call you this evening to know how you are doing? Put your faith in God." Soria said Nava did call her that evening to inquire how the biopsy had gone.

Nava, on the other hand, testified she may have known Soria had medical appointments in 2011, but she never had any conversations with Soria regarding the reasons for the appointments and Soria never told her she had a tumor or was having a biopsy. Nava stated she did not recall whether she wrote Soria a text message on September 30, 2011, but, after reviewing the text message, stated that she "could have" sent it.

Similarly, Soria recalls telling Montana in the summer of 2011 that she would be undergoing "several medical exams." However, Montana testified he did not learn that Soria had any medical issue until after Soria had been terminated.

4. *Soria's Discussions with Supervisors Regarding Potential Surgery*

At her deposition Soria testified that in late October or early November 2011 she informed Nava she wanted to have surgery in December to remove the tumor and requested medical leave. According to Soria, Nava told her she could not take leave in December because another employee would be on leave that month. Nava denied this conversation took place and testified Soria did not request time off for surgery.

4

5. *Univision's Termination of Soria's Employment*

Nava testified, after she became Soria's supervisor in August 2011, she repeatedly observed Soria arrive to work only minutes before her on-air time or after her show had already started. Nava also stated that other station personnel had complained about Soria's tardiness. In October 2011 Nava instructed Soria that she must arrive to work 30 minutes to one hour ahead of her show's start time to review the daily music log, research relevant topics and prepare her remarks. Nava also informed the Vice President of Content, Haz Montana, that she had concerns about Soria's tardiness and lack of preparation. According to Nava, in late October or early November she and Montana concluded Soria's tardiness was not improving, and they decided to terminate her employment. Soria was discharged on November 16, 2011.

6. *Soria's Complaint*

On January 18, 2013 Soria filed a complaint and on January 24, 2013 a first amended complaint alleging six causes of action: (1) disability discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.);[1] (2) failure to provide reasonable accommodation in violation of FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4) violation and interference with rights under the California Family Rights Act (CFRA) (§ 12945.1 et seq.); (5) retaliation in violation of CFRA; and (6) wrongful termination in violation of public policy. In her general allegations Soria averred that she had a "serious medical condition" and was terminated due to her "need for leave and disability/perceived disability." The first amended complaint also alleged Univision had improperly failed to engage in the interactive process or to provide reasonable accommodations.

7. *Univision's Motion for Summary Judgment/Summary Adjudication*

On March 21, 2014 Univision moved for summary judgment or, in the alternative, summary adjudication. Univision argued Soria's FEHA claims failed because she did not have a "disability" as recognized by FEHA since her tumor did not interfere with her

---

[1] Statutory references are to the Government Code unless otherwise stated.

5

ability to perform her job and because Univision did not have knowledge of any "disability." Univision also argued, even if Soria was disabled, Univision had a legitimate, nondiscriminatory reason for terminating her employment and Univision did not fail to accommodate Soria or fail to engage in the interactive process. As to Soria's CFRA claims, Univision argued Soria never requested CFRA leave and such leave was never denied. Finally, Univision argued Soria's common law wrongful termination claim failed because it was premised on the same conduct as the FEHA and CFRA claims.

In support of its argument it had a legitimate, nondiscriminatory reason for terminating Soria's employment, Univision submitted declarations from Soria's coworkers stating she had a habit of arriving late to work without prior approval. Univision also relied on declarations from Nava and Montana that Soria had failed to arrive at the required time even after being specifically instructed to do so.

8. *Soria's Opposition to the Summary Judgment Motion*

In opposition to the motion Soria first argued that triable issues of fact existed as to whether she was entitled to FEHA protection. Soria relied on her medical records and the testimony of her physicians to argue her tumor was a "medical condition," a perceived disability, a potential disability and/or an actual disability within the meaning of FEHA. Soria also asserted triable issues of fact existed as to whether her supervisor(s) knew of her medical situation. Soria insisted her alleged tardiness was a pretext for disability discrimination. As evidence Soria cited the timing of her termination—shortly after requesting time off for surgery. She also relied on evidence she had received positive performance reviews, survived two rounds of lay-offs and been awarded a full bonus in the year before her termination. Soria submitted her deposition testimony in which she stated that she had been late to work for non-medical reasons fewer than 10 times during 2011. Soria's opposition also pointed to "weaknesses and inconsistencies" in Univision's evidence regarding Soria's tardiness.

As for her CFRA claims, Soria argued the information submitted to Soria's supervisors was sufficient to put Univision on notice she was requesting CFRA-

6

qualifying leave and the true reason for her termination was retaliation for requesting CFRA leave.

### 9. *Univision's Reply*

In reply Univision argued that Soria had not pleaded that she was entitled to FEHA protection due to a "medical condition," potential disability or perceived disability. As such, Univision argued, Soria's argument was improper and should not be considered. Alternatively, Univision argued Soria was not entitled to FEHA protection under these new theories.[2]

### 10. *Summary Judgment for Univision*

The trial court granted summary judgment in favor of Univision, concluding as to the FEHA claims and the common law claim for wrongful termination that Soria did not have a physical disability or medical condition entitling her to protection. In addition, the trial court found Univision had demonstrated a legitimate, nondiscriminatory reason for the termination and Soria had not presented evidence that the proffered reason was a pretext for unlawful discrimination. The trial court also ruled Soria's CFRA claims failed because Soria did not meet the CFRA requirements for requesting leave.

### DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment or summary adjudication is properly granted only when "all the papers submitted show that there is no triable issue as to any material

---

[2] Along with its reply brief Univision submitted a "Reply Separate Statement of Undisputed Material Facts," as well as deposition testimony of one of Soria's physicians, Dr. Marvin Derezin, that had been taken after Soria's opposition had been filed. Soria filed an objection and motion to strike the reply separate statement and an objection to the testimony of Dr. Derezin. The trial court granted Soria's motion to strike the reply separate statement and sustained the objection to the deposition testimony but nonetheless relied on Dr. Derezin's testimony. Although Univision has not challenged the trial court's evidentiary ruling, it suggests we consider Dr. Derezin's testimony because Soria has had an opportunity to respond to it. (See *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8.) We decline that invitation and have not considered the deposition testimony of Dr. Derezin in our analysis.

7

fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment or summary adjudication de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party or a determination a cause of action has no merit as a matter of law. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 703; *Schachter*, at p. 618.)

When a defendant moves for summary judgment in a situation in which the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. Alternatively, the defendant may present evidence to "'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; see § 437c, subd. (p)(2).) "'"'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action."'" (*Ennabe v. Manosa*, *supra*, 58 Cal.4th at p. 705; accord, *Wilson v. 21st Century Ins. Co*. (2007) 42 Cal.4th 713, 720 [same]; *Kahn v. East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1002-1003 ["the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence'"].)

Once the defendant's initial burden has been met, the burden shifts to the plaintiff to demonstrate, by reference to specific facts, not just allegations in the pleadings, there is a triable issue of material fact as to the cause of action. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) On appeal from an order granting summary judgment, "the reviewing court must examine the evidence de novo and *should draw reasonable inferences* in favor of the nonmoving party." (*Miller v. Department of*

8

*Corrections* (2005) 36 Cal.4th 446, 470; accord, *Aguilar,* at p. 843.) "[S]ummary judgment cannot be granted when the facts are susceptible to more than one reasonable inference . . . ." (*Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378, 1392.)

>    2. *The Trial Court Erred in Granting Summary Adjudication on Soria's FEHA Claim for Discrimination*

>        a. *Governing law*

FEHA prohibits an employer from, among other things, discharging a person from employment because of a medical condition or physical disability. (§ 12940, subd. (a).) The express purposes of FEHA are "to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons." (§ 12920.5.) The Legislature accordingly has mandated that the provisions of the statute "shall be construed liberally" to accomplish its purposes. (§ 12993, subd. (a).) As the Supreme Court has recognized, "[b]ecause the FEHA is remedial legislation, which declares '[t]he opportunity to seek, obtain and hold employment without discrimination' to be a civil right [citation], and expresses a legislative policy that it is necessary to protect and safeguard that right [citation], the court must construe the FEHA broadly, not . . . restrictively." (*Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 243.)

To establish a prima facie case for unlawful discrimination, a plaintiff must provide evidence that "(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.)

Under FEHA medical condition and physical disability are separate bases for improper discrimination, each with its own statutory definition. Physical disability under FEHA includes "[h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that" both affects one or more of the body's major systems and "[l]imits a major life activity." (§ 12926, subd. (m)(1).) Major life activity

9

is "broadly construed" and includes working. (*Id.*, subd. (m)(1)(B)(iii).) FEHA protects individuals not only from discrimination based on an existing physical disability, but also from discrimination based on a potential disability or the employer's perception that the individual has an existing or potential disability. (§§ 12926, subd. (m)(4), (5), 12926.1, subd. (b).)

FEHA defines "medical condition" as either "[a]ny health impairment related to or associated with a diagnosis of cancer or a record or history of cancer" or a genetic characteristic. (§ 12926, subd. (i); see also Cal. Code Regs., tit. 2, § 11065, subd. (d)(7) ["'Medical condition' is a term specifically defined at Government Code section 12926, to mean either: [¶] (A) any cancer-related physical or mental health impairment from a diagnosis, record or history of cancer; or [¶] (B) a 'genetic characteristic,' . . . "].) Unlike the definition of physical disability, there is no requirement that a medical condition limit a major life activity in order to be protected.

b. *Soria was not entitled to raise a medical condition as an alleged basis for discrimination for the first time in opposition to the motion for summary judgment*

Univision's summary judgment motion did not address whether Soria had a "medical condition" protected under FEHA. In her opposition to summary judgment and again on appeal, Soria argues there are triable issues of fact whether her tumor was related to, or associated with, a diagnosis of cancer and, as such, was a protected medical condition. As it did in its summary judgment reply, on appeal Univision argues the first amended complaint alleged discrimination based only on a physical disability, not a medical condition, and that Univision "investigated *these allegations* and conducted discovery *limited thereto* . . . ." Univision contends Soria's new theories based on medical condition should be disregarded because they were not properly alleged in Soria's first amended complaint.[3]

---

[3] The trial court did not specifically rule whether the first amended complaint alleged discrimination based on medical condition, finding only that there was no evidence or legal authority to support "Plaintiff's attempted new theories . . . ."

10

"A defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers." (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98-99, fn. 4; see *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264 ["[t]o create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings"].) In assessing whether the issues raised by plaintiff in opposing summary judgment are encompassed by the controlling pleading, we generally construe the pleading broadly (see, e.g. *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1257); but the pleading must allege the essential facts "with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of [the] cause of action." (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Insurance Exchange* (2005) 132 Cal.App.4th 1076, 1099.)

In essence, Soria urges us to read her first cause of action as stating two separate claims, one for discrimination based on physical disability and one for discrimination based on medical condition.[4] The general allegations of the first amended complaint aver that Soria "had a serious medical condition, specifically a stomach tumor which might be cancerous . . . ." The phrase "medical condition" appears two additional times in the general allegations and twice in the first cause of action for discrimination. Soria argues this use of the term "medical condition" to describe her impairment was sufficient to expressly allege a cause of action for discrimination based on medical condition.

The first cause of action is captioned "Disability or Perceived Disability Discrimination in Violation of [FEHA]" and contains multiple allegations that Univision

---

[4] Whether captioned as one or more causes of action in a complaint, discrimination based on each protected characteristic is a separate claim under FEHA. (*Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1187 [allegations of sexual harassment and retaliation actually alleged two separate causes of action under FEHA even though pleaded in single count of complaint]; see *Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1364 [plaintiff who alleges defendant's single wrongful act invaded two different rights has stated two causes of action even though pleaded in a single count of the complaint].)

11

terminated Soria "because of" a "disability and/or perceived disability." Although Soria used the term "medical condition" several times, she did not allege she met the definition of having a medical condition under the statute—that is, that she had an impairment related to a diagnosis of cancer. Indeed, other than the statement her tumor might be cancerous, the first amended complaint does not mention cancer, let alone contain any allegation that Soria had received a diagnosis of cancer. Further, the first amended complaint contains no allegation a medical condition was the cause of, or a motivating factor for, Soria's termination. To the contrary, the only reason for termination expressly or impliedly stated in the first amended complaint is discrimination based on disability. In sum, even viewing the pleading liberally, Soria did not allege discrimination based on medical condition sufficiently to put Univision on notice she was asserting this separate claim. Accordingly, Soria cannot defeat summary judgment by arguing triable issues of fact exist regarding a claim for discrimination based on medical condition.[5]

c. *Triable issues of fact exist as to whether Soria had a disability under FEHA*

Soria contends she suffered from an actual disability under FEHA because she had a physical impairment, a tumor, that limited two major life activities, normal cell growth and working. In the alternative, Soria argues she had a potential disability or was regarded by her supervisors as having had an actual or potential disability.

i. *Disability discrimination based on limitation of normal cell growth*

A physical disability under FEHA includes a physical condition that "[l]imits a major life activity." (§ 12926, subd. (m)(1).) Major life activities, in turn, "include the operation of major bodily functions, including . . . normal cell growth . . . ." (Cal. Code Regs., tit. 2, § 11065, subd. (*l*)(2).) In response to Soria's argument she presented

---

[5]     During oral argument before the trial court Soria's counsel requested leave to amend the first amended complaint should the court find her opposition went beyond the pleadings. The trial court did not expressly rule on the request. Soria failed to address this issue in her briefing on appeal. Soria has forfeited any challenge to a ruling on the request to amend. (See, e.g., *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [failure to brief issue "constitutes a waiver or abandonment of the issue on appeal"]; *Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452 ["point not raised in opening brief will not be considered"].)

12

evidence raising a triable issue of fact whether her tumor limited normal cell growth, Univision contends this theory of disability discrimination was not adequately pleaded in the first amended complaint and, in any event, abnormal cell growth without further symptoms or limitations does not constitute a disability under FEHA.

Soria's first amended complaint alleged she had a "stomach tumor which might be cancerous" and the tumor "made it difficult for her to work and . . . limited her ability to participate in a major life activity such as work." Because the only major life activity specified was working, Univision contends Soria cannot assert her tumor limited any other major life activity. To be sure, the allegations provide the bare minimum of supporting detail and only vague, generalized assertions of the limitation of major life activity. However, the complaint identifies working as one such example of a life activity affected by the tumor, not the only one. There is no question the pleading adequately put Univision on notice that Soria claimed discrimination based on an ailment that limited a major life activity. It was Univision's obligation through discovery to learn the factual grounds for this theory of liability before moving for summary judgment. Its decision not to do so and its consequent failure to address this basis for Soria's disability discrimination claim in its moving papers are fatal to its effort to obtain summary judgment/summary adjudication as to this claim. (See Code Civ. Proc., § 437c, subd. (p)(2); *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 929 [summary judgment in favor of defendant inappropriate where defendant failed to address cause of action alleged, albeit not separately pleaded, in complaint; defendant cannot defeat for first time in reply cause of action it failed to address in its moving papers]; *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1534 [if defendant fails to meet its initial burden of showing entitlement to judgment as a matter of law, burden does not shift to plaintiff and motion is properly denied without regard to plaintiff's opposition].)

13

## ii. *Disability discrimination based on limitation of ability to work*[6]

Univision also argues Soria was not disabled under FEHA because she was not limited in the major life activity of working: Soria's tumor was asymptomatic; and, while she experienced some pain, there was no evidence the pain interfered with her ability to work. Soria contends the evidence demonstrated her tumor required her to attend multiple doctor appointments and potentially undergo surgery, all of which prevented her from working full time. Univision denies this limited her ability to work because it granted her requests for absences and late arrivals due to doctor visits.

FEHA defines "major life activity" to include working. (§ 12926, subd. (m)(1)(B)(iii); see also Cal. Code Regs., tit. 2, § 11065, subd. (*l*)(1).) A physical condition will be considered a limitation on a major life activity "if it makes the achievement of the major life activity more difficult." (§ 12926, subd. (m)(1)(B)(ii); see Cal. Code Regs., tit. 2, § 11065, subd. (*l*)(3).)

It is undisputed Soria's symptoms did not make it more difficult for her to work. The contemporaneous notes of two doctors who examined Soria prior to and shortly after her termination indicate the tumor was asymptomatic. Further, the only symptom Soria

---

[6] Although discrimination based on separate protected characteristics (for example, race and age) or claims of employer liability for different actions (for example, harassment and retaliation) are distinct causes of action for purposes of a motion for summary adjudication (see *Mathieu v. Norrell Corp.*, *supra*, 115 Cal.App.4th at p. 1188), Soria's cause of action for disability discrimination asserts the violation of a single primary right on alternative factual grounds: She had an actual physical disability or a physical condition that was potentially disabling; or Univision regarded her as having a disabling or potentially disabling physical impairment. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 ["a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant and a wrongful act by the defendant constituting a breach of that duty"; "the violation of a single primary right gives rise to but a single cause of action"]; *id.* at p. 683 ["under the primary right theory a properly pleaded cause of action must be premised on a single primary right even though it states multiple grounds of liability"].) The viability of any one of these factual theories defeats the motion for summary adjudication. (See *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 251; *Hindlin v. Rust* (2004) 118 Cal.App.4th 1247, 1258.) However, we address each of them for the guidance of the trial court on remand.

14

herself complained of was some pain in her side; however, there is no evidence the pain resulted from her tumor or caused her any difficulty in performing her job.

However, this is not the end of the inquiry. When the mitigating measure taken by an individual to treat or accommodate a physical ailment limits a major life activity, then the ailment may qualify as a disability under FEHA. (See § 12926, subd. (m)(1)(B)(i) [whether a major life activity is limited "shall be determined without regard to mitigating measures such as medications, assistive devices, prosthetics, or reasonable accommodations, unless the mitigating measure itself limits a major life activity"]; Cal. Code Regs., tit. 2, § 11065, subd. (*l*)(3)(C).) Here, the treatment for Soria's tumor consisted of doctor visits and potential surgery that prevented Soria from coming to work.[7] It is undisputed Soria was tardy or absent from work at least nine times in 2011 due to medical appointments related to her tumor; and a jury could reasonably infer either surgery, if it occurred, or follow-up appointments to continue to monitor the tumor would result in further time away from work. Repeated or extended absences from work may constitute a limitation on the major life activity of working. (See *Jadwin v. County of Kern* (E.D.Cal. 2009) 610 F.Supp.2d 1129, 1178 [for purpose of summary judgment inability to work full time "is certainly a 'limitation' on working"]; cf. *Rizzio v. Work World America, Inc.* (E.D.Cal. Sept. 22, 2015, 2:14-cv-02225-TLN-DAD) 2015 U.S. Dist. LEXIS 127154 [finding on motion to dismiss that "the Court could draw a reasonable inference that Plaintiff's condition limited a major life activity by virtue of the fact that the condition required hospitalization and subsequent leave from work"].)

Univision's contention Soria's need to miss work for doctors' appointments cannot constitute a limitation of a major life activity because it gave her time off for those visits misses the point. The company's response to Soria's requests may have been

---

[7]     Univision argues Soria did not properly plead her treatment of the tumor made working difficult. Again, we reject Univision's overly narrow reading of the first amended complaint. In light of FEHA's definition of physical disability, Soria's allegation she had a physical disability that limited a major life activity was sufficient to put Univision on notice that her treatment may be the cause of the limitation.

15

appropriate and no doubt will be part of its defense to her disability discrimination claim. But evidence she could not work full time due to treatment of her condition plainly established a triable issue of material fact on the issue whether Soria had a disability under FEHA.

### iii. *Discrimination based on a potential or perceived disability*

In addition to protecting against discrimination based on an existing physical disability, FEHA also prohibits discrimination based on a physical impairment that is potentially disabling. (§ 12926.1, subd. (b).) Further, FEHA defines disability to include: "Being regarded or treated by the employer . . . as having, or having had, any physical condition that makes achievement of a major life activity difficult" and being regarded by the employer as having a condition "that has no present disabling effect but may become a physical disability . . . ." (§ 12926, subd. (m)(4) & (5).) By protecting individuals "regarded as" disabled, the Legislature intended "to provide protection when an individual is erroneously or mistakenly believed to have any physical or mental condition that limits a major life activity." (§ 12926.1, subd. (d).)

Univision argues Soria's tumor was not potentially disabling because it was shown to be benign when it was removed in 2012. Once again Univision misconstrues the fundamental purpose of FEHA. Based on what was known in November 2011, Soria's tumor could have been malignant, had the potential to become malignant or could continue to grow in a way that obstructed Soria's bodily functions and limited a major life activity. Discriminatory treatment of Soria in November 2011 because of that potential would violate FEHA whether or not the condition ultimately became disabling. The Legislature intended to protect employees from adverse employment action by employers concerned about what may happen in the future.

Summary judgment was likewise improper on the issue whether Univision regarded or treated Soria as having a disability or potential disability. Soria testified she told Nava about her tumor and explained the possibility she would have to undergo major surgery. She also produced evidence of a text message in which Nava wished her luck on the day of a biopsy. Although Nava denies she knew about Soria's tumor and possible

16

surgery, the evidence on this point is in conflict; and a jury could reasonably conclude Nava knew of Soria's tumor and believed she might continue to miss work due to further doctor appointments.

The issue whether Univision regarded Soria as having a condition that was potentially disabling, under the theory that Soria's tumor adversely affected normal cell growth, was not addressed by Univision in its moving papers. Because being regarded as having a potential disability is included within the definition of physical disability under FEHA (§ 12926, subd. (m)(5)), the first amended complaint adequately alleged this alternate basis for her claim of disability discrimination. The fault for failing to discover this theory and to address it in its moving papers is entirely Univision's: On this record Univision cannot be found to have met its initial burden to show the claim was without merit.

### d. *There are triable issues of fact whether Univision acted with discriminatory intent*

In addition to demonstrating triable issues of material fact regarding her membership in a protected class, Soria established there were material issues of fact as to Univision's motive in terminating her, the only other contested element of Soria's claim for disability discrimination.[8]

### i. *Proving discriminatory intent*

Discriminatory intent is a necessary element of a discrimination claim. (See § 12940, subd. (a); *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1370 [plaintiff's claim based on a disparate treatment theory "requires a showing that the employer acted with discriminatory intent"]; see also *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 662; *Mixon v. Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316.) In addition, "there must be a causal link between the employer's consideration of a protected characteristic and the action taken by the employer." (*Harris v. City of Santa Monica* (2013)

---

[8]     Univision does not dispute that Soria was qualified for her position and/or was performing competently and that she suffered an adverse employment action.

17

56 Cal.4th 203, 215 (*Harris*).) To "more effectively ensure[] that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision," a plaintiff must demonstrate "discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor." (*Id.* at p. 232; see *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 551 ["proof of discriminatory animus does not end the analysis of a discrimination claim. There must also be evidence of a causal relationship between the animus and the adverse employment action"].) As part of showing that discriminatory animus was a substantial cause of the adverse employment action, an employee must show that the employer had knowledge of the employee's protected characteristic (here, Soria's disability). (See *Avila v. Continental Airlines*, *Inc.* (2008) 165 Cal.App.4th 1237, 1247 ["'[a]n adverse employment decision cannot be made "because of" a disability, when the disability is not known to the employer'"].)

A plaintiff may prove his or her discrimination case by direct or circumstantial evidence or both. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.) Because direct evidence of intentional discrimination is rare and most discrimination claims must usually be proved circumstantially, in FEHA employment cases California has adopted the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668]. (*Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at pp. 356-357; see *Harris*, *supra*, 56 Cal.4th at p. 214.) "[A] plaintiff has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion. A prima facie case establishes a presumption of discrimination. The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason. If the employer discharges this burden, the presumption of discrimination disappears. The plaintiff must then show that the employer's proffered nondiscriminatory reason was actually a pretext for discrimination, and the plaintiff may offer any other evidence of discriminatory motive. The ultimate

18

burden of persuasion on the issue of discrimination remains with the plaintiff." (*Harris,* at pp. 214-215; see *Guz*, at pp. 354-356.)

An employer moving for summary judgment on a FEHA cause of action may satisfy its initial burden of proving a cause of action has no merit by showing either that one or more elements of the prima facie case "is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors." (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038; see *Guz v. Bechtel National*, *Inc.*, *supra*, at pp. 356-357; *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 150.) Once the employer sets forth a nondiscriminatory reason for the decision, the burden shifts to the plaintiff to produce "'substantial responsive evidence' that the employer's showing was untrue or pretextual." (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735; accord, *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1156; see also *Guz,* at p. 357.) "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz,* at p. 361; see also *Kelly v. Stamps.com Inc*. (2005) 135 Cal.App.4th 1088, 1097-1098 [if a defendant employer's motion for summary judgment "relies in whole or in part on a showing of nondiscriminatory reasons for the [adverse employment action], the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the [adverse action]. [Citations.] To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred"].)

ii. *Univision's knowledge of Soria's disability*

"[A]n employer 'knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation. The employer need only know the underlying facts, not the legal significance of those facts." (*Faust v. California*

19

*Portland Cement Co.* (2007) 150 Cal.App.4th 864, 887.) "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. 'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations . . . .'" (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 237.)

Although Soria provided no medical records to Univision and did not notify anyone in human resources regarding her condition, no authority supports Univision's argument, which the trial court appeared to accept, that either step is essential to establish a claim for disability discrimination. All that is required is that the plaintiff show that the "employees who decided to discharge [her] knew of [her] disability." (*Avila v. Continental Airlines*, *Inc.*, *supra*, 165 Cal.App.4th at p. 1248.) Soria's testimony of her conversations with Nava provided that evidence.

In her deposition Soria stated she told Nava she had a tumor and the doctors wanted to remove it and "cut off part of my stomach and my esophagus." Soria also testified she told Nava she would like time off for surgery in December 2011. Although Nava testified that these conversations never took place and she was unaware of Soria's diagnosis or need for surgery, this disputed issue of fact precludes summary adjudication of the discrimination claim based on Univision's lack of knowledge of Soria's disability.

Relying on *Avila v. Continental Airlines, Inc.*, *supra*, 165 Cal.App.4th 1237, Univision contends even if Soria told Nava about the tumor and need for surgery, Soria's statements "fall short of what is required to establish employer notice . . . ." The plaintiff in *Avila*, was fired for violating his employer's attendance policy. Prior to being dismissed, plaintiff had been hospitalized for acute pancreatitis and missed four days of work. He submitted two medical forms to his employer documenting his absences. The first form stated plaintiff had visited a medical center and was unable to work for one day. The second form, dated four days later, stated plaintiff had been admitted to the hospital for a few days and would be unable to work for five days. The forms did not include any information about the reason for plaintiff's hospitalization and did not

20

indicate there would be any restriction on plaintiff's ability to work after the five-day period. Only after his termination did plaintiff tell his employer the hospitalization was related to pancreatitis. The trial court granted the employer's motion for summary judgment on plaintiff's FEHA disability discrimination claim, ruling the medical forms submitted by plaintiff were insufficient to put the employer on notice that plaintiff suffered from a disability. Our colleagues in Division Five of this court agreed, holding "the forms communicated only that plaintiff was unable to work on four work days . . . due to an unspecified condition, and that plaintiff was hospitalized for three days. . . . Informing Continental merely that plaintiff had been hospitalized was not sufficient to put Continental on notice that plaintiff was suffering from a qualifying disability. [Citation.] Plaintiff might have been hospitalized for reasons other than disability—for example, he might have had minor elective surgery, or he might have sought preventative treatment for some other condition that was not disabling." (*Avila*, at p. 1249.)

In contrast to the facts in *Avila*, the information Soria testified she had relayed to her supervisor was not vague or conclusory, nor did it communicate an unspecified incapacity. According to Soria, she specifically told Nava she had been diagnosed with a potentially cancerous tumor and the doctors wanted to remove it, which would require removal of part of her stomach and esophagus. The only reasonable interpretation of this information, if the jury finds Soria's testimony credible, is that Soria had a serious condition that would interfere with her ability to work. The fact Soria did not use the term "disability" or unequivocally invoke the protections of FEHA is of no moment. An employer need only know the underlying facts, not whether those facts fit into the statutory definition of "disability" under FEHA. (See *Faust v. California Portland Cement Co., supra,* 150 Cal.App.4th at p. 887 ["'whether defendant knew alcohol abuse is considered a "disability" is of no consequence here. It is sufficient that defendant knew plaintiff had an alcohol problem'"].)

21

iii. *Evidence Univision's proffered reason for termination was a pretext for discrimination*

Soria does not dispute Univision proffered a legitimate, nondiscriminatory reason for her termination. However, she argues she presented sufficient evidence that Univision's reason was pretextual to defeat Univision's motion.

Generally in cases involving affirmative adverse employment actions, pretext may be demonstrated by showing "'the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge.'" (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 224; see also *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005 [pretext may be shown by "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons"'"]; *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 715 [court may "take into account [] manifest weaknesses in the cited reasons [for termination] in considering whether those reasons constituted the real motive for the employer's actions, or have instead been asserted to mask a more sinister reality"].) However, simply showing the employer was lying, without some evidence of discriminatory motive, is not enough to infer discriminatory animus. "The pertinent [FEHA] statutes do not prohibit lying, they prohibit discrimination." (*Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at p. 361; see also *Slatkin v. University of Redlands, supra,* 88 Cal.App.4th at p. 1156.) "'Pretext may also be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before the termination.'" (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1023.)

Univision relied on declarations from five of Soria's coworkers and supervisors, who each stated Soria was repeatedly late to work in 2011, to support its decision to terminate Soria for her chronic tardiness and lack of motivation and/or engagement in her

22

job. One declarant, Priscy Fernandez, stated Soria was often late on Mondays when, as Soria told him, she would "sometimes" be stuck in traffic driving to the studio after spending the weekend in San Diego or Tijuana. Supervisor Nava declared, not only had she observed Soria arrive after the start of her program on "three to four occasions" after August 2011, but also two staff members of the morning show had complained about Soria's tardiness on "multiple other occasions." Nava also stated in her declaration that Soria's "lack of preparation led to poor quality radio content" and "embarrassing mistakes on the air." Nava said she "repeatedly" instructed Soria to arrive 30 minutes to one hour ahead of her program and reported the two women had a longer conversation at some point in October 2011 regarding precisely what Soria needed to do to prepare for her show. According to Nava, after this conversation Soria continued to arrive "only minutes" before her show started and "gave only the bare minimum effort toward her job." Nava voiced her concerns to Vice President of Content Haz Montana beginning in September 2011; in late October or early November the two decided to terminate Soria's employment.

Soria presented no direct evidence of discrimination. The circumstantial evidence she advanced, however, when viewed as a whole, is sufficient to permit a reasonable inference Univision's actual motive for firing Soria was discriminatory. First, there are inconsistencies and contradictions in the evidence of tardiness submitted by Univision. For example, Fernandez stated in his declaration he observed Soria arrive 10-15 minutes after her show had started on 10 separate occasions in 2011. However, at his deposition Fernandez testified he observed Soria arrive after her show had started two to three times per week. In addition, in his declaration Fernandez said that he reported Soria's tardiness to Maria Nava "each time it occurred." However, at his deposition he testified he told Nava about Soria's tardiness only three or four times. Similarly, Nava stated in her declaration she observed Soria arrive after her show had started "more than once per month," but in her deposition Nava testified that she personally observed Soria arrive late "[p]robably once a week." Not surprisingly, Soria's testimony regarding her punctuality conflicts with the evidence submitted by Univision. Soria testified that, other than days

23

on which she was late due to medical appointments for which she had advance permission, she arrived after her show started fewer than 10 times in 2011.

Such conflicts and inconsistencies in the evidence supporting an employer's proffered legitimate reason for termination, without more, cannot support an inference of discrimination; however such evidence may be probative when considered together with other factors. (See *California Fair Employment & Housing Com. v. Gemini Aluminum Corp.*, *supra*, 122 Cal.App.4th at p. 1023 ["[w]hile an inference of intentional discrimination cannot be drawn solely from evidence showing the employer to be unworthy of credence, it is circumstantial evidence that may be probative when considered together with the elements of the prima facie case"].) In this case the conflicting evidence is particularly significant because the proffered reason for termination intertwines with the employee's disability. It is undisputed Soria was absent or late to work nine times between May and November 2011 for medical appointments related to her tumor. Apart from one instance where Nava learned after the fact that Soria's tardiness was due to a doctor appointment, there is no testimony in the record that the late arrivals observed by Soria's coworkers and supervisors were *not* due to tumor-related appointments. On this record a finder of fact could reasonably infer at least some of the tardiness observed by Univision employees in 2011 was due to Soria's medical appointments and, as a result, Soria was improperly terminated, at least in part, as a direct result of protected activity. (See *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128, 1139-1140 [employee terminated for "absenteeism and tardiness" created "triable issue of fact as to whether her attendance problems were caused by" her disability and therefore "jury could reasonably find the requisite causal link between [the disability] and Humphrey's absenteeism and conclude that MHA fired Humphrey because of her disability"].)

Soria's performance prior to her termination also supports a finding of pretext. Soria's final performance review was completed in February 2011 by Fernando Perez, who rated Soria overall as "Consistently Meets Expectations." Perez noted Soria's music breaks were "well executed" and Soria "is always prepared." The review also stated an

24

objective for Soria during 2010 had been to "[s]pend more time doing show prep to avoid monotonous delivery and improve execution of talk breaks." Commenting on whether she had achieved that objective, Perez wrote, "Sofia has added more personality and a brighter sound to her delivery." Other than the single negative comment about preparation time, which Soria appeared to have rectified, the entire review was positive. In addition, Soria's ratings were consistent with Univision's expectations: The performance review stated "[t]he show is meeting all ratings expectations." Soria also submitted ratings logs for the relevant time period showing her program consistently received higher ratings than competitors in her time slot. Elizabeth Alvarado, another Univision on-air personality, provided additional evidence of Soria's positive performance. Alvarado testified Soria was often requested by clients to appear at promotional events. Finally, Univision conducted lay-offs in April and August 2011, which included lay-offs of on-air talent, but Soria was not terminated at either time.

The probative value of these positive performance indicators is underscored by the fact that Soria's tardiness was not a new issue in 2011. Fernandez testified in deposition that Soria had been late two to three times a week during the 10 years he had worked with her. Similarly, three other coworkers testified Soria's tardiness was a consistent issue for years prior to her termination. Yet despite this pattern of behavior over a decade, Soria had not been disciplined, but instead received positive reviews and survived two rounds of lay-offs. The only negative comment in her most recent review was mitigated by statements her performance was improving.

Viewing the evidence most favorably to Soria, as we must, it was not until Soria disclosed her disability to her supervisor that her tardiness became a problem. Soria told Nava in September or October 2011 about her tumor and potential surgery after a series of approved tardiness and absences due to doctor appointments. On September 30, 2011 Nava texted Soria wishing her luck on her biopsy. Then in October, after disclosure of the biopsy and tumor, Nava and Soria had a conversation in which Nava told Soria to arrive earlier. In late October or early November, Soria again discussed the tumor with

Nava and told her that she may need time off for surgery. Only then did Nava and Montana decide to fire Soria for a purported problem that had persisted for years.

Taken together, this evidence—the timing of the disclosure and discharge, the apparent ongoing nature of Soria's late arrival at work, the positive performance reviews and the contradictions in the testimony proffered by Univision—is sufficient to permit a finding the business justification for Soria's termination advanced by Univision was pretextual. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1061-1062 [finding triable issues of fact as to whether proffered reasons for termination were pretextual when complaints about employee were known prior to protected activity and included in performance reviews, but no action had been taken and employee rated "above expectation"]; *Diego v. Pilgrim United Church of Christ* (2014) 231 Cal.App.4th 913, 930-932 [finding triable issues of fact regarding pretext when employee terminated shortly after perceived protected activity and conversation with supervisor about perceived protected activity and employee had received primarily favorable performance reviews during 10 years of employment]; *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 479-480 [holding reasonable trier of fact could find pretext when evidence existed undermining purported reason for termination, individual recommending termination knew of protected activity, termination occurred only four months after protected activity and job performance predominantly positive]; *California Fair Employment & Housing Com. v. Gemini Aluminum Corp., supra*, 122 Cal.App.4th at pp. 1023-1024 [substantial evidence existed to find pretext where employee terminated less than two weeks after protected activity, supervisor gave inconsistent reasons for termination, employer lacked credibility and employee had "excellent work record"].)

3. *The Trial Court Erred in Granting Summary Adjudication on Soria's FEHA Claim for Failure To Provide Reasonable Accommodation*

In addition to prohibiting disability discrimination, FEHA provides an independent cause of action for an employer's failure "to make reasonable accommodation for the known physical or mental disability of an applicant or employee" unless the accommodation would cause "undue hardship" to the employer. (§ 12940, subd. (m).)

Once an employer is aware of a disability, it has an "affirmative duty" to make reasonable accommodations for the employee. (Cal. Code Regs., tit. 2, § 11068, subd. (a).)

"Generally, '"[t]he employee bears the burden of giving the employer notice of the disability. [Citation.] This notice then triggers the employer's burden to take 'positive steps' to accommodate the employee's limitations. . . . [¶] . . . The employee, of course, retains a duty to cooperate with the employer's efforts by explaining [his or her] disability and qualifications. [Citation.] Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employer's capabilities and available positions.""" (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222.) An employee is not required to specifically invoke the protections of FEHA or speak any "magic words" in order to effectively request an accommodation under the statute. (See *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954; *Avila v. Continental Airlines*, *Inc., supra*, 165 Cal.App.4th at p. 1252 ["no particular form of request is required"].) However, the employee must engage in the interactive process and """"can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it."""" (*Id.* at pp. 1252-1253.)

"When a claim is brought for failure to reasonably accommodate the claimant's disability, the trial court's ultimate obligation is to '"isolate the cause of the breakdown . . . and then assign responsibility" so that "[l]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown.""" (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 261.) Thus, "the employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that . . . the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." (*Id.* at p. 263.)

27

As discussed, Soria presented evidence demonstrating triable issues of material fact concerning whether she gave adequate notice to Univision of her disability. As to this cause of action, Univision argues it is nonetheless entitled to summary adjudication because Soria never requested an accommodation. However, Soria testified she told Nava she "wanted to have the operation in December, and she [Nava] replied by saying that Omar would have an operation in December." Soria reasonably understood this response to mean Nava was denying her request for time off. There is no merit to any of Univision's arguments as to why this conversation, which it denies even occurred, did not constitute a sufficient request to Nava for an accommodation.

First, Univision explains, as of the time of her conversation with Nava, Soria had not yet decided whether to have surgery in December 2011. Thus, Univision argues, Soria was not actually requesting leave. Whether or not Soria had finally made the decision to undergo the operation, her testimony was that she told Nava that she wanted to do so, not that she might have the operation or was considering it. That evidence is sufficient to permit a finder of fact to conclude Soria sufficiently communicated to Nava she intended to have surgery and was requesting time off as an accommodation. (See *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 228, 243 [holding that employee sufficiently requested accommodation of leave for surgery when she stated she "would likely" need surgery at some point in the next few months].)

Univision next argues Soria's conversation was unclear as to the amount of time Soria would need to be on leave. Univision cites no authority for the proposition an employee must supply specific details about a requested leave before it is sufficient to qualify as a request for an accommodation. In fact, such a rule would conflict with the established principle that an employer has a duty to take affirmative steps to accommodate the employee once it is aware an accommodation is necessary. (See *Raine v. City of Burbank*, *supra*, 135 Cal.App.4th at p. 1222.) Forcing the employee to come forward with a detailed plan improperly puts the initial burden of finding an accommodation on the employee. (See *Prilliman v. United Air Lines, Inc., supra,* 53 Cal.App.4th at p. 954 ["[w]e also find without merit respondents' suggestion that the

28

disabled employee must first come forward and request a specific accommodation before the employer has a duty to investigate such accommodation"].) By informing her supervisor she intended to have her tumor removed and would require time off work, Soria adequately notified Univision she was in need of an accommodation, thus shifting the burden to Univision to investigate and respond. (See *Moore v. Regents of University of California*, *supra*, 248 Cal.App.4th at pp. 228, 244 [finding employee sufficiently requested leave by stating she "would likely" need surgery within the next few months and would need a "few days off work"].)

Univision's final two arguments similarly misconstrue its obligations as an employer. Univision asserts Nava never denied the request for leave, she just stated someone else was having surgery that month. Univision also argues Soria's claim is precluded because she failed to offer potential alternate dates for her surgery. However, once Univision was aware of a need for accommodation, the burden was on it to do everything in its power to find a reasonable accommodation. (*Jensen v. Wells Fargo Bank*, *supra,* 85 Cal.App.4th at p. 263.) Accordingly, once Soria requested time off for the surgery, the burden was on Univision to inquire further and determine whether leave could be scheduled at a different time. There is simply no evidence in the record that Univision took any steps to find an accommodation of any kind.

4. *The Trial Court Erred in Granting Summary Adjudication on Soria's FEHA Claim for Failure To Engage in Interactive Process*

Under section 12940, subdivision (n), it is separately actionable for an employer to fail "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (§ 12940, subd. (n); see *Gelfo v. Lockheed Martin Corp*. (2006) 140 Cal.App.4th 34, 54.) "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986,

1013.)  Both the employer and the employee are responsible for participating in the interactive process.  Typically, the employee must initiate the process "unless the disability and resulting limitations are obvious."  (*Ibid.*)

As discussed, there are disputed issues of fact as to whether Soria requested an accommodation and thus initiated the interactive process by informing Nava of her need for surgery.  Because there is no evidence Univision took any steps to work with Soria to identify a reasonable accommodation, summary adjudication on this cause of action was improper.

5. *The Trial Court Erred in Granting Summary Adjudication on Soria's CFRA Claims*

The Moore-Brown-Roberti Family Rights Act (CFRA) (§ 12945.1 et seq.) "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security."  (*Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 606; accord, *Faust v. California Portland Cement Co.*, *supra*, 150 Cal.App.4th at p. 878.)  The CFRA makes it unlawful for an employer of 50 or more persons "to refuse to grant a request by an employee" for family care and medical leave and "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right" provided by the CFRA.  (§ 12945.2, subds. (a), (t).)  It is also an unlawful employment practice to discharge or discriminate against any individual because of his or her exercise of the right to family care or medical leave as provided by the CFRA.  (§ 12945.2, subd. (*l*)(1).)  Grounds for leave include "an employee's own serious health condition" when that condition "makes the employee unable to perform the functions of the position of that employee."  (§ 12945.2, subd. (c)(3)(C).)  The CFRA defines a "[s]erious health condition" as "an illness, injury, impairment, or physical or mental condition that involves either of the following:  [¶]  (A)  Inpatient care in a hospital, hospice, or residential health care facility.  [¶]  (B)  Continuing treatment or continuing supervision by a health care provider."  (§ 12945.2, subd. (c)(8).)  "Inpatient care" means "a stay in a hospital, hospice, or residential health care facility, any subsequent treatment in connection with such inpatient care, or any period of incapacity.

30

A person is considered an 'inpatient' when a health care facility formally admits him or her to the facility with the expectation that he or she will remain at least overnight and occupy a bed . . . ." (Cal. Code Regs., tit. 2, § 11087, subd. (q)(1).) "Continuing treatment" means "ongoing medical treatment or supervision by a health care provider . . . ." (*Id.*, subd. (q)(3).)

### a. *Triable issues of fact preclude summary judgment on Soria's CFRA interference claim*

A CFRA interference claim "'consists of the following elements: (1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights.'" (*Moore v. Regents of University of California*, *supra,* 248 Cal.App.4th at p. 250.)

For the first time on appeal Univision argues Soria did not have a "serious health condition" that would entitle her to CFRA leave because she did not require "inpatient care" prior to or at the time of her termination. As of the date she was fired, Univision explains, Soria had not decided whether to have the surgery, so her condition did not necessarily involve a stay in the hospital. Even if not forfeited because not raised in the trial court (see *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [issues not raised in trial court cannot be raised for first time on appeal]; *Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1488), triable issues of fact preclude summary adjudication on this issue. As discussed, there is conflicting evidence as to whether Soria had decided to have the surgery at the time she was fired. Regardless, Soria testified she had told Nava she wanted to have the surgery—testimony from which a reasonable trier of fact could find she necessarily would require a stay in a hospital.

Univision also contends for the first time on appeal that Soria did not need "continuing treatment" because she did not present sufficient evidence to demonstrate her condition would include more than three consecutive days of incapacity, citing a federal regulation interpreting the Family and Medical Leave Act of 1992 (FMLA), 29 Code of

31

Federal Regulations part 825.115.[9] Univision's argument fails for two reasons. First, three consecutive days of incapacity is only one definition of "continuing treatment"; another is, "[a]ny period of absence to receive multiple treatments . . . for: [¶] . . . [¶] [a] condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment . . . ." (29 C.F.R. § 825.115(e).) Second, as the moving party Univision, not Soria, had the burden to present undisputed facts that Soria's condition did not need "continuing treatment." Univision failed to do so.

In the trial court Univision argued, and the trial court ruled, Soria could not meet the elements of a CFRA interference claim because she never requested CFRA leave. This position, too, is without merit.

In enacting CFRA "the Legislature expressly delegated to [California's Fair Employment and Housing] Commission the task of 'adopt[ing] a regulation specifying the elements of a reasonable request' for CFRA leave." (*Avila v. Continental Airlines, Inc.*, *supra*, 165 Cal.App.4th at p. 1256; see § 12945.2, subd. (a).) The regulation adopted by the Commission provides, in part, to request CFRA leave an employee "shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under CFRA or FMLA, or even mention CFRA or FMLA, to meet the notice requirement; however, the employee must state the reason the leave is needed, such as, for example, the expected birth of a child or for medical treatment. . . . The employer should inquire further of the employee if necessary to determine whether the employee is requesting CFRA leave and to obtain necessary information concerning the leave (i.e., commencement date, expected duration, and other permissible information)." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(1).) The regulation further provides, "Under all circumstances, it is the employer's responsibility

---

[9]     Federal regulations interpreting the Family and Medical Leave Act of 1993 apply to CFRA definitions when not inconsistent with them. (Cal. Code Regs., tit. 2, § 11087)

to designate leave, paid or unpaid, as CFRA or CFRA/FMLA qualifying, based on information provided by the employee . . . , and to give notice of the designation to the employee." (*Id.*, subd. (a)(1)(A).) "Whether notice is sufficient under CFRA is a question of fact." (*Avila,* at p. 1255.)

Even if Soria informed Nava she wanted to have surgery in December 2011, Univision has argued, her notice was not sufficient under CFRA because it did not state the duration of the requested leave. Univision improperly focuses on only part of the governing regulation. While the employee should indicate the anticipated timing and duration of the leave, whether or not that occurs, the employer has an obligation, once informed of the need for a CFRA leave, "to obtain necessary information concerning the leave (i.e. commencement date, expected duration, and other permissible information)." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(1).) Federal courts interpreting the substantially identical notice provision in the FMLA have held an employee need not communicate a specific duration of requested leave to adequately put the employer on notice that a qualifying leave is being requested. (See *Sarnowski v. Air Brooke Limousine*, *Inc.* (3d Cir. 2007) 510 F.3d 398, 402 ["the regulations are clear that employees may provide FMLA qualifying notice before knowing the exact dates or duration of the leave they will take"]; *Lamonaca v. Tread Corp.* (W.D.Va. 2016) 157 F.Supp.3d 507, 514 [fact that employee's emails to employer "provided no indication of how long the requested absence would be" was not fatal to employee's FMLA claims]; see also *Spangler v. Federal Home Loan Bank of Des Moines* (8th Cir. 2002) 278 F.3d 847, 852 ["'the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave'"]; *Manuel v. Westlake Polymers Corp.* (5th Cir. 1995) 66 F.3d 758, 764 ["What is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case. The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."]; see generally *Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 487 ["California courts routinely

rely on federal cases interpreting the FMLA when reviewing the CFRA"]; *Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509, 514, fn.1 [same].)  The record here, at the very least, creates a triable issue of fact as to whether Soria's statements concerning time off for surgery were sufficient to trigger Univision's obligation to inquire further into the details of Soria's request.

Finally, Univision contends Soria failed to sufficiently request CFRA leave because she did not submit a formal leave request and did not suggest alternative times for her surgery.  Contrary to Univision's argument, CFRA does not require a specific form of notice by the employee.  (Cal. Code Regs., tit. 2, § 11091, subd. (a)(1).)  Further, the regulations are explicit in imposing on the employer a duty to inquire as to details of the employee's request when necessary.  (*Ibid*.; see also *Moore v. Regents of University of California*, *supra*, 248 Cal.App.4th at p. 249 ["an employer bears a burden, under CFRA, to inquire further if an employee presents the employer with a CFRA-qualifying reason for requesting leave"].)

### b. *Triable issues of fact preclude summary adjudication on Soria's CFRA retaliation claim*

"The elements of a cause of action for retaliation in violation of CFRA are: '"(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA [leave]; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA [leave].'"  [Citation.]  Similar to causes of action under FEHA, the *McDonnell Douglas* burden shifting analysis applies to retaliation claims under CFRA."  (*Moore v. Regents of University of California*, *supra,* 248 Cal.App.4th at p. 248.)

Although conceding it is an employer covered by CFRA, Univision argues Soria cannot meet the remaining elements of a CFRA retaliation claim because she (i) did not have a serious health condition making her eligible for CFRA leave; (ii) did not adequately request CFRA leave; and (iii) was terminated for a legitimate nondiscriminatory reason and not because of her request for CFRA leave.  For the

34

reasons discussed, Univision was not entitled to summary adjudication on this claim:  A reasonable jury could conclude, based on the evidence presented, that Soria had a serious health condition and that she adequately requested CFRA leave.  Further, there are triable issues of fact as to whether Univision's purported reason for discharging Soria was pretextual.

6. *The Trial Court Erred in Granting Summary Adjudication on Soria's Common Law Claim for Wrongful Termination*

Soria's cause of action for wrongful termination in violation of public policy is grounded on her contentions she was terminated because of her tumor and need for medical treatment and/or surgery.  As discussed, Soria has established triable issues of fact as to whether Univision's stated reason for terminating her was pretext for unlawful discrimination.  Accordingly, as with the discrimination claim, summary adjudication on the wrongful termination cause of action should have been denied.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings not inconsistent with this opinion.  Soria is to recover her costs on appeal.


PERLUSS, P. J.

We concur:


ZELON, J.


KEENY, J.[*]

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.