Filed 2/2/21  Torres v. Kaiser Foundation Hospitals CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| RAFAELA TORRES, | B291831 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC646517) |
| v. | |
| KAISER FOUNDATION HOSPITALS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed in part; reversed in part and remanded.

Mancini & Associates, Marcus A. Mancini, Tara J. Licata; Benedon & Serlin, Douglas G. Benedon, and Kelly Riordan Horwitz for Plaintiff and Appellant.

Foster Employment Law; Apex Employment Law and Michael E. Wilbur for Defendant and Respondent.

_____

Plaintiff Rafaela Torres appeals from a judgment entered after the trial court granted summary judgment in favor of defendant Kaiser Foundation Hospitals (Kaiser). Torres was a hospital kitchen worker for Kaiser. In 2013 Torres took a two-week leave of absence to care for her seriously ill mother in Mexico. Shortly after returning, Torres took two months of medical leave for stress and anxiety. In 2014 Torres took a six-month medical leave of absence for shoulder surgery and recovery. When Torres returned to work in November 2014, she repeatedly requested time off in January and February 2015 to care for her mother in Mexico, who was dying. Kaiser denied each of Torres's requests, but Torres still traveled to Mexico. When Torres failed to report for work, Kaiser classified her absence as unauthorized and subsequently terminated her.

Torres brought claims under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.)[1] for discrimination, retaliation, harassment, and wrongful termination based on her actual or perceived mental and physical disabilities. Torres also alleged interference with her right to leave and retaliation in violation of the California Moore-Brown-Roberti Family Rights Act (CFRA; §§ 12945.1, 12945.2). The trial court granted summary judgment, finding Torres had failed to rebut Kaiser's showing it had a legitimate, nondiscriminatory reason for terminating Torres (based on staffing needs), and Torres's CFRA claim failed because Torres had not met the eligibility requirement she work at least 1,250 hours for Kaiser in the 12 months prior to her requested leave.

---

[1]	All further undesignated statutory references are to the Government Code.

2

We conclude there are disputed questions of fact as to Torres's claims for retaliation in violation of CFRA, wrongful termination in violation of public policy based on CFRA, and declaratory relief, but Torres has failed to raise a triable issue as to her FEHA claims or her claim for punitive damages. We reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Torres's Employment with Kaiser*[2]

In 2008 Kaiser hired Torres as an on-call kitchen worker in the food and nutrition services department at Kaiser's Panorama City Medical Center. Kaiser employs about 50 kitchen workers, in a mix of full-time, part-time, and on-call positions. In 2012 Torres became a regularly scheduled part-time kitchen worker. Since at least 2013, Sheila Sansano served as director of the food and nutrition services department. Torres's immediate supervisor was Miguel Sanchez, who was the assistant director of the department in charge of scheduling kitchen worker shifts. According to Torres, she and Sanchez did not get along well. Susan Yaller, a human resources consultant for Kaiser, conferred with managers and supervisors regarding termination of Kaiser employees.

As a Kaiser kitchen worker, Torres was represented by the United Health Care Workers-West (union) and was employed under the terms of a collective bargaining agreement (CBA) between Kaiser and the union. The CBA provided that

---

[2]    The factual background is taken from evidence submitted by the parties in support of or in opposition to Kaiser's motion for summary adjudication. We note where the facts are in dispute.

3

employees were entitled to a certain number of "life balance days," which "[i]nsofar as possible . . . will be granted on the day(s) most desired by the Employee" with "[p]reference" determined by seniority. The CBA provided further that "[r]equests for Life Balance Days shall be granted in an emergency situation," and as to nonemergency situations, requests "must be made forty-eight (48) hours in advance (not including days that a department or work area is closed) for the Employee to receive the time off. In the event that a non-emergency request for a Life Balance Day(s) is denied, the next request by the same Employee shall be granted provided the day requested is at least forty-eight (48) hours after the day that was denied."

The CBA also provided for personal time off without pay: "Where circumstances warrant, an Employee may request and may receive personal time off without pay. Such requests shall not be unreasonably denied. In a verifiable emergency, on duty Employees may ask for personal time off which shall be granted on momentary notice. It shall not be a condition to the granting of personal time off that the Employee secure his/her own replacement. Employees may not be denied personal time off because they have accumulated Vacation, Life Balance Days, and Sick Leave." The CBA also stated that employees with at least six months of service "shall be entitled to a leave of absence for illness, injury, or pregnancy, critical or chronic illness or death in the Employee's immediate family." Further, "[l]eaves of absence for compelling or personal situations may be granted to Employees at the discretion of the department manager and will not be unreasonably denied without adequate cause. A leave of

4

absence without pay up to sixty (60) days with Management's approval may be granted to Employees for personal reasons."

### 1. *Torres's 2013 and 2014 leaves*

In May 2013 Torres requested two weeks of leave to care for her mother, who was suffering from advanced pancreatic cancer. In support of her request, Torres submitted proof of her mother's health condition on Kaiser forms. Kaiser approved Torres's request and designated her absence as family leave under the Family and Medical Leave Act of 1993 (29 U.S.C. §§ 2601–2654) (FMLA) and CFRA. At the time, Torres told Sanchez her mother was ill and told Sansano she needed time off because her mother was dying.

After Torres returned to work, in July 2013 she took leave for about two months to treat her own stress and anxiety. Kaiser again designated her absence as family leave under FMLA and CFRA.

In March 2014 Torres was awarded vacation time for September 2014 through a bidding process based on seniority in accordance with the CBA. Beginning on May 6, 2014, Torres took medical leave for an operation to her right shoulder. Kaiser initially designated Torres's leave of absence as family leave under FMLA and CFRA. But Torres exhausted her CFRA leave allowance on July 14, 2014. Torres remained on authorized leave and did not return to work until November 3, 2014. Sanchez and Sansano were aware Torres was on medical leave for a physical injury.

2.   *Kaiser's 2014 denials of leave for Torres to care for her sick mother*

Torres did not take her vacation leave in September 2014 because she was still on medical leave.  Sometime before Torres returned to work in November 2014, Torres contacted Sanchez and requested to reschedule her September vacation time for January or February 2015 so she could visit her mother.  Sanchez told Torres he could not approve any time off because too many kitchen workers were out.  According to Sanchez, "Torres did not mention she needed time off to care for her mother."  But at his deposition, Sanchez acknowledged Torres told him in 2013 she wanted to see her mother because she was ill, and then "[a] little bit after November" 2014 Torres said she wanted time off to visit her sick mother.

During the period from November 2014 through January 2015, Torres made several more requests to Sanchez for time off, but Sanchez denied each request "for operational needs."  In late December 2014 Torres submitted a request through Kaiser's online portal to use accrued vacation days to take time off from January 17 through February 15, 2015.  Sanchez and Sansano discussed Torres's request, and Sanchez told Sansano he could not approve the request due to staffing shortages and the fact the vacation request was outside of the vacation bidding process.  Sansano agreed, and Torres's request was denied "due to operational needs."

Sanchez explained his decision to deny Torres's requests: "At the end of the year it seems like a lot of people get sick, people go on [l]eave, plus [there are] the vacations that have been approved from the previous April."  Sanchez estimated he had "10 or 12 people out on almost a daily basis" from November 1, 2014

6

through the end of January 2015.  However, Sanchez later testified during an arbitration (as part of the CBA grievance process) that in January 2015 the kitchen employed about 50 workers, only five of whom took any leave that month.  Further, in February 2015 only three kitchen workers were out on leave.  In his declaration in support of Kaiser's motion for summary judgment, Sanchez stated that during the period from January 17 to February 15, 2015 (the specific dates for which Torres requested leave), three kitchen workers were on long-term medical leave (one full-time, one part-time, one on-call), one part-time kitchen worker resigned, and three on-call kitchen workers were not available for certain shifts.[3]

In early January 2015 Torres asked Sanchez why her vacation request was denied, and Sanchez told her it was for operational reasons.  Sanchez asserted in his declaration Torres did not say at this time the time off was to visit her sick mother.  Torres also met with Sansano in January to discuss the denial of her request to use her vacation time.  Sansano said she could not grant Torres's request because Sansano did not have someone to cover for her.  Torres explained she needed the time off to "go see [her] mother because she was very sick."  According to Torres, Sansano replied, "I don't care."  Sansano and Torres also discussed Torres's request for additional family leave time.

---

[3]      In his declaration, Sanchez also identified additional kitchen workers who took time off in November, December, and January that did not conflict with Torres's requested leave, as well as absences by workers employed in positions other than kitchen worker, such as cook, diet clerk, and cashier.  Kaiser does not explain how the absences of employees in different positions impacted the decisions to deny Torres's requests for leave.

Sansano told Torres she could not "fix the FMLA for her." Sansano did not recall whether she told Torres she could take an unpaid leave of absence.

3. *Kaiser's continued denials of Torres's requests for leave in January and February 2015 and termination of Torres*

On January 24, 2015 Torres was not scheduled to work, but she went to Kaiser to turn in a "caregiver status report," which she left with executive chef Jamby Martin. The report stated, "This patient is the caregiver for a person who . . . [¶] [r]equires supervision/attendant care for illness" and the "patient is placed on caregiver release from 1/26/2015 through 2/8/2015." The report was signed by Juan Fernando Vargas, M.D. After giving the note to Martin, Torres went to Mexico to care for her sick mother. She did not show up for her shift the following Monday, on January 26.

When Sanchez arrived to work on January 26, Martin gave him the report. Sanchez testified he "didn't understand that note." He added, "I never seen a note like that. I didn't know what to make of it. To me, the employee was gone, abandoned her job, without any authorization from HR or from [m]anagement." But he understood Torres was requesting time off to care for someone. Sanchez showed the report to Sansano, who found the note was "inappropriate" and "weird" because it did not come from the doctor for Torres's mother. When Kaiser's lawyer asked Sansano at her deposition to confirm as to the patient that she "couldn't tell if it was a pet or a human being because it didn't identify who Ms. Torres wanted to care for," Sansano answered, "Right." At Sansano's direction, Sanchez

called Yaller to discuss the report. Yaller told Sanchez to call Torres. Sanchez averred he tried to call Torres "two or three" times that week but did not reach her. He left one voicemail message. Sanchez did not document the calls, although Kaiser's policy required a supervisor to document the "time, method, [and] result" of efforts made to reach an employee who failed to report for work.

On January 27 Kaiser mailed a completed form letter to Torres denying her request for leave. The letter acknowledged Torres had requested leave "to care for [her] parent due to her serious health condition," but it stated Torres was not eligible for leave under FMLA or CFRA because she had worked only 922.85 hours for Kaiser in the prior 12 months, fewer than the 1,250 hours required to qualify under the statutes. The box on the form stating, "[y]ou failed to provide sufficient certification to support your request," was not checked. Torres failed to report for her shifts on January 27, 28, and 29.

On January 29 Torres submitted an online request to use her life balance days for time off from February 9 through 13, 2015. Sansano denied the request due to staffing levels. But Sanchez acknowledged during his deposition that during the period from January 26 through the end of February he did not attempt to contact any on-call kitchen workers to see if they could cover Torres's shifts. Sanchez testified the kitchen had 12 to 20 on-call kitchen workers at the time, but his recollection was that all of them were already scheduled to work.

Sometime between January 27 and 30, Sanchez, Sansano, and Yaller met to discuss Torres's absence from work. Yaller drafted a letter to Torres, which Sanchez signed on January 30 and sent by messenger and mail. The letter stated, "You have

not been at work since January 23, 2015, nor have you provided the employer with an appropriate off work certification.  In addition, you were scheduled to work on January 26, 2015 to January 29, 2015 from 4:00 [p.m.] to 8:00 [p.m].  You did not report to work as scheduled and did not contact us to report your absence as required by our Attendance Program.  At this time, your failure to report to work is considered an 'authorized [*sic*] absence'.  [¶]  . . .  [¶]  It is imperative that you contact me . . . no later than . . . February 2, 2015 . . . .  Should you fail to comply with this directive, we will assume that you no longer wish to maintain your position with Kaiser . . . and will proceed with processing your termination."  Torres's son received the letter and called Torres in Mexico to tell her she had received a letter suggesting she would be fired.

On February 2 Torres submitted a second online request to use her life balance days for time off from February 9 through 13, 2015.  Sansano again denied the request based on staffing shortages.  On February 3 Torres and her daughter Arcelia contacted Kaiser's human resources department in Oakland.  Arcelia translated the conversation.[4]  The human resources worker told Torres she could use up to 30 hours of accrued sick time or take up to six weeks of unpaid personal leave to care for her mother.  Torres and Arcelia then called Sanchez on his work cell phone.  Torres told Sanchez she was in Mexico caring for her sick mother.  Torres explained she had spoken to human resources about available leave.  Torres requested to "pass . . . the phone" to her daughter who could better explain what she was

---

[4]     Kaiser submitted an audio recording of the conversation with its summary judgment papers.

10

told, but Sanchez responded it was his day off and Torres could call him the next day.

After the phone call, Sanchez e-mailed Yaller to confirm his conversation with Torres. Sanchez wrote that Torres told him "she got permission from HR in Oakland and her [d]octor to go see her [m]om. I told her that her family leave and [v]acation was denied and that she needed to report to work immediately." Sanchez did not mention that Torres's mother was ill.

The next day Arcelia called Sanchez. She tried to explain the leave options Kaiser's human resources representative had set out for Torres, but Sanchez responded, "HR has nothing to do w[ith] how [I] run[] the dep[artment]." He added he "was not going to put anything through and that was it."

On February 6 Sanchez sent to Torres by messenger another letter drafted by Yaller, which stated, "At this time, your failure to report to work is considered an 'unauthorized absence'. . . . [¶] [W]e are directing you to report to work on Monday, February 9, 2015 . . . . Should you fail to comply with this directive, we will . . . proceed with processing your termination."

Torres remained in Mexico to care for her mother, who had fallen into a coma. On February 10 Sanchez signed and sent to Torres by messenger another letter drafted by Yaller stating, "You did not report to work as scheduled on February 9, 2015 and did not contact us to report your absence as required . . . . We have made several attempts to reach you by phone, using the phone numbers you provided, but were unsuccessful in making direct contact with you. [¶] You failed to notify the Employer of your inability to report for your scheduled shift and you failed to respond to messages from the Employer inquiring about your

11

status. . . . [¶] At this time we are unclear of your employment status and your intentions because you have not made direct contact with management." The letter concluded by stating Kaiser would "proceed with processing [Torres's] termination" if Torres did not contact Sanchez by 5:00 p.m. the next day.

Yaller acknowledged in her deposition the statement in the letter that Torres had failed to contact management was inaccurate in light of Torres's February 3 phone call to Sanchez. Yaller stated she would not have recommended terminating Torres before Torres's return and instead would have conducted an investigation before terminating her if Yaller had known Torres was in Mexico caring for her mother who was dying of pancreatic cancer. Sansano similarly testified she did not recall Sanchez ever telling her Torres was in Mexico because her mother was dying. Sansano acknowledged Torres's purpose for traveling to Mexico would have been an important piece of information in the decision whether to terminate Torres.

On February 11, after Torres still did not report for work, Sanchez, Sansano, and Yaller decided to terminate her. On February 13 Sanchez messengered a letter to Torres stating she was terminated as of that date. The letter stated, "As you are aware, you have not provided me with an appropriate off work certification and I have not received any documentation as of today." The letter also noted Torres failed to comply with the call-in policy that an employee who cannot report for work give notice to his or her manager prior to the start of the scheduled shift. The February 13 letter attached a "corrective action process" notice terminating Torres's employment for unauthorized absences and failure to comply with the call-in

12

policy. In total, Torres failed to report for 14 shifts between January 26 and February 12.

Torres returned from Mexico on February 13, 2015. That day she called Sanchez and inquired about her schedule. At Sanchez's instruction, on February 16 Torres met with a union representative and Sanchez, at which Sanchez read Torres the corrective action notice documenting her termination as of February 13. On February 20 Torres's mother died.

On January 15, 2016 Torres filed a complaint against Kaiser with the Department of Fair Employment and Housing (DFEH), alleging violations of FEHA and CFRA. Torres alleged Kaiser took adverse actions against her, including discrimination, harassment, retaliation, denial of family care or medical leave, and termination. The DFEH complaint alleged Torres suffered from a physical disability (right shoulder injury) and a mental disability (anxiety and depression), and it alleged Kaiser retaliated against Torres based on her use of CFRA leave.[5]

B.      *Torres's Complaint*

On January 11, 2017 Torres filed a complaint against Kaiser[6] alleging, among other things, Kaiser denied her requests for leave and terminated her because of her disabilities and in

---

[5]      In February 2016 Torres was reinstated as a kitchen worker without backpay following a grievance process under her CBA. At the time of the hearing on the summary judgment motion, Torres continued to work in Kaiser's food and nutrition services department.

[6]      The complaint also named Kaiser Permanente NPC, Kaiser Foundation Health Plan Inc., and Doe defendants, but they were not named in Kaiser's motion for summary judgment.

13

retaliation for her use of medical leave. Torres alleged causes of action against Kaiser for (1) discrimination, harassment, and retaliation in violation of FEHA based on physical disability; (2) discrimination, harassment, and retaliation in violation of FEHA based on mental disability; (3) violation of CFRA; (4) retaliation and wrongful termination in violation of public policy; and (5) declaratory relief. Torres based her FEHA claims on her physical and mental disabilities and Kaiser's denial of medical leave for her disabilities. Torres also alleged Kaiser retaliated against her based on her request for, entitlement to, or taking leave under CFRA and FMLA. Torres attached a copy of her DFEH complaint, incorporating its allegations into her complaint. As to her wrongful termination claim, Torres alleged Kaiser violated the public policies embodied in FEHA, CFRA, and Labor Code section 132a, which prohibits discrimination, harassment, and retaliation based on an employee's submission of a workers' compensation claim.

C.   *Kaiser's Motion for Summary Judgment or, in the Alternative, Summary Adjudication*

On March 22, 2018 Kaiser filed a motion for summary judgment or, in the alternative, summary adjudication. In support of its motion, Kaiser submitted deposition testimony, declarations, and other evidence relating to Torres's employment, requests for leave, and work absences. Kaiser argued Torres's FEHA claims failed because Kaiser had no knowledge Torres suffered from a disability and Kaiser had a legitimate, nondiscriminatory business reason for its actions, namely, Torres's unauthorized absences. Kaiser also asserted Torres's

14

FEHA claims were limited to conduct that occurred on or after January 15, 2015, one year before she filed her DFEH complaint.

As to Torres's CFRA claims, Kaiser argued Torres was not eligible for CFRA leave in January 2015 and Torres's unauthorized absences were a legitimate, nondiscriminatory business reason for its actions. Kaiser sought summary adjudication of Torres's claim for wrongful termination in violation of public policy on the grounds Torres never submitted a workers' compensation claim under Labor Code section 132a and Kaiser did not violate FEHA. Kaiser also argued Torres could not prove her claim for declaratory relief because it was derivative of her other claims, and her punitive damages claim failed because Sanchez, Sansano, and Yaller were not officers, directors, or managing agents of Kaiser.

In opposition to the motion, Torres submitted deposition testimony and other evidence and argued there were disputed questions of material fact whether Kaiser denied her requests for leave and terminated her based on her physical or mental disability or in retaliation for her taking medical leave under CFRA. Torres asserted Kaiser had no legitimate business reason for denying her request for leave to care for her mother. As to her retaliation claims, Torres contended she "engaged in protected activity when she requested and took medical leave in 2013 and 2014, for her mental disabilities and shoulder disabilities . . . . Torres was subjected to adverse employment actions when she was repeatedly denied leave to take care of her dying mother and when she was terminated." Torres failed to address Kaiser's request for summary adjudication of her request for punitive damages.

15

D.      *The Trial Court's Ruling*

After a hearing, on June 7, 2018 the trial court granted summary judgment in favor of Kaiser. The trial court ruled Torres's discrimination, retaliation, and wrongful termination claims under FEHA failed because Kaiser had shown a legitimate, nondiscriminatory reason to terminate Torres based on her unauthorized absences from work and failure to call in to say she would not be reporting for work. Further, Torres had not presented evidence to show pretext that Kaiser acted with a discriminatory intent because of her physical and mental disability in denying her leave. The trial court found Torres had not established a prima facie case of interference or retaliation under CFRA because Torres had not met the CFRA eligibility requirement of having worked at least 1,250 hours for Kaiser in the 12 months preceding her request for leave in January 2015.[7]

The trial court found Torres's FEHA harassment claims failed because Torres had not offered evidence of any harassing conduct that occurred on or after January 15, 2015 (one year before Torres filed the DFEH complaint).[8] The court ruled

---

[7]      The trial court did not address Torres's claim Kaiser retaliated against her on the basis of her requesting and taking CFRA leave.

[8]      Torres does not present an argument in her opening brief in support of her harassment claims or her claim of wrongful termination in violation of the public policy based on Labor Code section 132a, thereby forfeiting the issues. (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned."]; *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 63 [argument made for the first time in reply brief is forfeited].)

16

Torres's claim for wrongful termination in violation of the public policy based on Labor Code section 132a also failed because Torres did not submit a workers' compensation claim with Kaiser. The court concluded summary adjudication was proper as to Torres's declaratory relief cause of action because it was derivative of Torres's other claims. The court found Kaiser's request for summary adjudication of Torres's request for punitive damages was moot as a result of the court's other rulings. The trial court did not rule on Kaiser's evidentiary objections.[9]

On June 28, 2016 the trial court entered judgment in favor of Kaiser. Torres timely appealed.

## DISCUSSION

A. *Standard of Review on Summary Judgment*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*); *Delgadillo v. Television Center, Inc.* (2018) 20 Cal.App.5th 1078, 1085.) "'''''We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the

---

[9] Where the trial court fails to rule on evidentiary objections in the context of a summary judgment motion, on appeal the court presumes the objections have been overruled, with the objector having the burden to renew its objections in the Court of Appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) Kaiser does not raise its evidentiary objections on appeal.

evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.""'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; accord, *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179 (*Husman*).)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; *Husman, supra*, 12 Cal.App.5th at pp. 1179-1180.) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Husman*, at pp. 1179-1180.) We must liberally construe the opposing party's evidence and resolve any doubts about the evidence in favor of that party. (*Regents, supra*, 4 Cal.5th at p. 618; *Husman*, at p. 1180.) "'[S]ummary judgment cannot be granted when the facts are susceptible [of] more than one reasonable inference . . . .'" (*Husman*, at p. 1180, quoting *Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378, 1392.)

In evaluating claims of discrimination under FEHA, California courts apply the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214 (*Harris*); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) The same approach is applied in evaluating claims of retaliation under FEHA and CFRA. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*) [applying *McDonnell Douglas* burden-shifting to claim of retaliation under FEHA]; *Bareno v.*

18

*San Diego Community College Dist.* (2017) 7 Cal.App.5th 546, 560 (*Bareno*) ["CFRA retaliation claims . . . are subject to the *McDonnell Douglas* burden-shifting analysis [citation]."].)

Under this approach, if the plaintiff establishes a prima facie case supporting his or her discrimination or retaliation claim, the burden shifts to the employer to rebut the presumption of discrimination or retaliation by offering a legitimate, nondiscriminatory reason for the adverse employment action. (*Harris, supra*, 56 Cal.4th at p. 214; *Guz, supra*, 24 Cal.4th at p. 355.) An employer may meet its initial burden in moving for summary judgment or adjudication of an employment discrimination or retaliation cause of action by presenting evidence that one or more elements of a prima facie case is lacking, or the employer acted for a legitimate, nondiscriminatory reason. (*Husman, supra*, 12 Cal.App.5th at p. 1181; *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158 (*Featherstone*); *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 591 (*Soria*).) A legitimate, nondiscriminatory reason is one that is unrelated to the prohibited bias and, if true, would preclude a finding of discrimination or retaliation. (*Guz, supra*, 24 Cal.4th at p. 358.) "[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*." (*Ibid*.)

If the employer satisfies its initial burden, the burden shifts to the plaintiff to present evidence creating a triable issue of fact showing the employer's stated reason was a pretext for unlawful animus in order to avoid summary judgment or

19

adjudication. (*Husman, supra*, 12 Cal.App.5th at p. 1182; *Featherstone, supra*, 10 Cal.App.5th at pp. 1158-1159; *Soria, supra*, 5 Cal.App.5th at p. 591.) "The plaintiff's evidence must be sufficient to support a reasonable inference that discrimination [or retaliation] was a substantial motivating factor in the decision. [Citations.] The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory [or retaliatory] motive." (*Featherstone*, at p. 1159; see *Soria*, at p. 591 [plaintiff must produce ""'substantial responsive evidence" that the employer's showing was untrue or pretextual"'].)

To meet his or her burden, the plaintiff may present evidence showing the stated reason by the employer was "unworthy of credence" as circumstantial evidence of pretext. (*Guz, supra*, 24 Cal.4th at p. 361; see *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, 147 ["In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."].) However, in order to prevail, a plaintiff must present evidence to support a rational inference that intentional discrimination or retaliation, "on grounds prohibited by the statute, was the true cause of the employer's actions." (*Guz*, at p. 361, italics omitted; *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 863 [""'the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence"'"'].)

20

B.  *Triable Issues of Fact Exist Whether Kaiser's Denials of Torres's Requests for Leave Beginning in September 2014 Constituted a Continuing Course of Conduct*

Kaiser contends Torres can only recover under FEHA for actions taken by Kaiser after January 15, 2015—the year preceding the filing of her DFEH complaint.  We agree with Torres that Kaiser's repeated denials of her requests for leave starting sometime before November 2014 form a continuing violation, allowing her to recover for acts that occurred more than a year before the filing of her DFEH complaint.

"A plaintiff suing for violations of FEHA ordinarily cannot recover for acts occurring more than one year before the filing of the DFEH complaint."  (*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1400; accord, *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 818 (*Richards*); see § 12960, subd. (e).)  However, "when an employer engages in a continuing course of unlawful conduct under the FEHA . . . the statute of limitations begins to run, not necessarily when the employee first believes that his or her rights may have been violated, but rather, *either* when the course of conduct is brought to an end, as by the employer's cessation of such conduct or by the employee's resignation, *or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain."  (*Richards*, at p. 823; accord, *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192 ["The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them."].)

In applying the continuing violation doctrine, "we consider whether 'the employer's . . . actions [were] (1) sufficiently similar

21

in kind—recognizing . . . that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms [citation]; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence."' (*Yanowitz, supra*, 36 Cal.4th at p. 1059, quoting *Richards, supra*, 26 Cal.4th at p. 823.) The plaintiff bears the burden to demonstrate her claims are founded on a pattern or practice of employer conduct that continued into the limitations period. (*Jumaane v. City of Los Angeles, supra*, 241 Cal.App.4th at p. 1402.)

Here, Sanchez's denials of Torres's requests for leave to see her sick mother in January 2015 began as early as September 2014 while Torres was still on medical leave for her shoulder injury. The denials were sufficiently similar in kind—premised on Kaiser's operational needs—and continued into February 2015. As Sanchez testified in his deposition, "[F]rom the time [Torres] came back in November all the way through January she request[ed] vacation." Torres continued to seek some form of time off, alternatively requesting to use vacation time, medical leave, "flexible personal days," sick time, or personal unpaid leave. Thus, the denials did not acquire a degree of permanence at least until Torres went to Mexico and failed to report for work on January 26, 2015. Under these facts, Torres has met her burden to raise a triable issue of fact whether Kaiser's repeated denials constituted a continuous course of conduct beginning in September 2014.

C. *Torres Raised a Triable Issue of Fact Whether Kaiser Retaliated Against Her for Exercising Her CFRA Rights*

1. *Torres adequately alleged Kaiser's denials of leave were in retaliation for exercising her CFRA rights*

Kaiser argues Torres only alleged in her DFEH and superior court complaints that her termination was an adverse employment action taken in retaliation for the exercise of her right to CFRA leave in May 2014, not Kaiser's denials of her requests for leave sometime before her return to work in November 2014. Kaiser's contention lacks merit.

"'The complaint serves to delimit the scope of the issues before the court on a motion for summary judgment [citation], and a party cannot successfully resist summary judgment on a theory not pleaded [citations].'" (*Koussaya v. City of Stockton* (2020) 54 Cal.App.5th 909, 946, fn. 17; accord, *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 888 ["The pleadings determine the issues to be addressed by a summary judgment motion."]; *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 313 ["'[A] "defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers."'"].)

Although Torres's complaint is not a model of clarity, it does allege Kaiser retaliated against Torres based on her request for CFRA leave. Further, the complaint incorporates the allegations Torres made in her DFEH complaint into Torres's CFRA cause of action. Torres's DFEH complaint identified both denial of leave and termination as "adverse actions" Kaiser took against Torres and alleged Kaiser retaliated against her based on her use of CFRA leave. The complaint therefore reasonably

23

alleges Kaiser's denials of Torres's requests for leave were retaliatory adverse employment actions based on her earlier use of statutorily protected leave.[10]

>    2.    *Torres raised a triable issue of fact that Kaiser's proffered reasons for its adverse employment actions were pretextual*

In order to prove a cause of action for retaliation in violation of CFRA, the plaintiff must prove: "'"(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA [leave]; (3) the plaintiff exercised [his or] her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of [the] exercise of [his or] her right to CFRA [leave].'"'" (*Bareno, supra,*

---

[10]    The cases relied on by Kaiser are distinguishable, involving plaintiffs who sought to rely on entirely new, unpled theories of recovery to avert summary judgment. (See *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1225 [affirming summary judgment without reaching unpled theory where "[plaintiff] never alleged a cause of action in which she sought the return of her insurance premiums"]; *Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, 1377, 1387 [affirming trial court's refusal to consider ownership question raised by plaintiffs in opposition to summary judgment motion where plaintiffs did not plead lack of ownership in lawsuit challenging defendants' refusal to allow plaintiffs to gather signatures in front of defendants' stores]; *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1343 ["Plaintiff did not allege a cause of action claiming that an open book account existed between himself and [defendant] with respect to the disputed rental arrearages."].)

7 Cal.App.5th at p. 560; accord, *Soria, supra*, 5 Cal.App.5th at p. 604.)

Kaiser does not dispute as to Torres's claim it was an employer covered by CFRA; Torres was eligible for and took CFRA leave in May 2014 for surgery to her right shoulder; and Torres exercised her right to take leave for the qualifying CFRA purpose of shoulder surgery and recovery.[11]  Thus, the viability of Torres's CFRA retaliation claim turns on the fourth factor—whether she suffered an adverse employment action because of the exercise of her right to CFRA leave.  (*Bareno, supra*, 7 Cal.App.5th at p. 560; accord, *Soria, supra*, 5 Cal.App.5th at p. 604.)

---

[11]  "[T]o be eligible for CFRA leave an employee must have 'at least 1,250 hours of service with the employer during the previous 12-month period . . . .'  (Gov. Code, § 12945.2, subd. (a).)"  (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 262; accord, *Department of Fair Employment & Housing v. Verizon California, Inc.* (2003) 108 Cal.App.4th 160, 162, fn. 2.)  It is undisputed Torres qualified and was approved for CFRA leave from May to July 2014.  Further, in evaluating an employee's CFRA retaliation claim, "the issue is not whether [the employee] was eligible to take CFRA leave at the time she suffered the adverse employment action, but whether she was eligible to take CFRA leave when she took the leave that resulted in the adverse employment action."  (*Dudley*, at p. 262.)  Therefore, the trial court erred in ruling Torres's retaliation claim failed because she did not work at least 1,250 hours for Kaiser in the 12 months preceding her request for leave.  Kaiser does not argue otherwise on appeal, instead asserting Torres failed to show pretext for Kaiser's legitimate reasons for denying her requests for leave and later termination.

25

Kaiser contends it denied Torres's requests for leave and later terminated her based on legitimate, nonretaliatory reasons, including that Torres did not report to her scheduled shifts, she was not eligible for CFRA leave when she requested time off in January 2015, and Kaiser properly denied Torres's request for leave. Torres argues she has raised a triable issue of fact whether Kaiser's purported reasons were pretext for retaliation against Torres for exercising her right to CFRA leave. Torres has the better argument.

First, contrary to Kaiser's contention, the temporal proximity between Torres's medical leave and Sanchez's denials of Torres's leave requests raises an inference Sanchez was motivated to deny Torres's request because she recently exercised her right to medical leave. (*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 243 ["close temporal proximity between a plaintiff's protected activity and the alleged retaliatory conduct against the plaintiff has been found sufficient to support a prima facie case of causation" with respect the retaliatory animus and the adverse action]; *Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343, 365 [temporal proximity between protected disclosure of information and adverse employment action supported whistleblower retaliation claim].) Torres was still on medical leave for her shoulder injury when Sanchez first denied her request to use her scheduled vacation time in January instead of September. When Torres returned to work in November 2014, Sanchez continued to deny Torres's repeated requests for time off to see her sick mother.

Further, Sanchez provided inconsistent testimony as to whether his denials of Torres's leave requests were based on staffing needs. In his deposition, Sanchez estimated he had "10

26

or 12 people out on almost a daily basis" from the beginning of November 2014 through the end of January 2015.  Sanchez later contradicted that testimony during the arbitration proceedings, averring that only about five out of 50 total kitchen workers took any leave in January 2015 and only three kitchen workers took leave in February.

Sanchez also testified in his deposition the kitchen employed 12 to 20 on-call kitchen workers, but none was available at the time of Torres's absences.  But in his declaration in support of Kaiser's motion for summary adjudication, Sanchez identified only one on-call kitchen worker who was on leave and three who were unavailable for certain shifts at the time of Torres's requested leave.  Further, Sanchez never attempted to schedule on-call kitchen workers to cover Torres's missed shifts in January and February 2015.

As to Torres's January 2015 caregiver status report, Sanchez testified he "didn't understand that note" despite being aware since "[a] little bit after November" that Torres's requests for time off were for the purpose of seeing her sick mother.  Straining credulity, Sansano testified as to the asserted patient that needed care, Sansano "couldn't tell if it was a pet or a human" despite the report stating Torres "is the caregiver for *a person* who . . .  [¶]  [r]equires supervision/attendant care for illness."  (Italics added.)  Further, Torres told Sansano in early January she needed to "go see [her] mother because she was very sick," to which Sansano replied, "I don't care."  And despite Sanchez's and Sansano's agreement the caregiver status report was not adequate, Kaiser's letter response on January 27 did not identify insufficient certification as a ground for denying Torres's request.  To the contrary, the January 27 letter acknowledged

27

Torres had requested leave "to care for [her] parent due to her serious health condition." Moreover, there is no evidence anyone from Kaiser conveyed to Torres the report's purported insufficiencies, including Sanchez when he spoke to Torres by the phone on February 3.

Torres also presented evidence Kaiser did not follow its own policies in denying leave and terminating Torres. The CBA required Kaiser to grant Torres's emergency requests to use life balance days or take personal time off without pay. But Sanchez rejected Torres's requests to use both types of leave, although he knew Torres was in Mexico caring for her dying mother. When Torres's daughter Arcelia contacted Sanchez on February 4, 2015 to request Torres use one of the leave options Kaiser's human resources representative described to Torres the day before (use of 30 hours of accrued sick time or up to six weeks personal leave without pay), Sanchez stated "HR has nothing to do w[ith] how [I] run[] the dep[artment]" and he "was not going to put anything through and that was it."

Finally, Sanchez failed to disclose to Yaller the purpose of Torres's requests for leave (for Torres to visit her sick mother). And Yaller stated she would not have recommended terminating Torres if she had known Torres was in Mexico caring for her dying mother.

Viewing this evidence in the light most favorable to Torres, as we must, Torres has raised a triable issue of fact as to whether intentional retaliation on grounds prohibited by CFRA was the true cause of the Kaiser's actions in denying Torres leave and, ultimately, terminating her.

28

D.    *Torres Failed To Raise a Triable Issue of Fact as to Her FEHA Retaliation Claims*

"'[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.'" (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 942; accord, *Glynn v. Superior Court* (2019) 42 Cal.App.5th 47, 55.)

As discussed, the trial court ruled Torres's FEHA claims based on her physical and mental disabilities failed because Kaiser had shown legitimate, nondiscriminatory reasons to terminate Torres. Citing to the same evidence of pretext on which she relies to prove her CFRA retaliation claim, Torres argues she has raised a triable issue whether Kaiser's reasons were pretextual. She has not.

To prove her FEHA retaliation claim, Torres had to show Kaiser's stated reasons for taking adverse employment action were pretexts for retaliation based on Torres's opposition to "any practices forbidden under [FEHA] or because [Torres] has filed a complaint, testified, or assisted in any proceeding under" FEHA based on Torres's physical or mental disability. (§ 12940, subd. (h); see *Yanowitz, supra*, 36 Cal.4th at p. 1042 [employee's refusal to follow supervisor's order to terminate sales associate because supervisor found the associate sexually unattractive was protected activity for which she could not be subjected to retaliation].)

While Torres's evidence casts doubt on whether Kaiser's proffered reasons for denying leave and terminating her were genuine, Torres has presented no evidence to support an

29

inference Kaiser's actions were taken because Torres engaged in protected activity under section 12940, subdivision (h).  (See *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 863 ["'[D]isbelief of an [e]mployer's stated reason for a termination gives rise to a compelling inference that the [e]mployer had a different, unstated motivation, but it does not, without more, reasonably give rise to an inference that the motivation was a prohibited one.'"]; *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1531-1532 [same].)  Nor has Torres cited to any authority for the proposition an employee who merely exercises her right to medical leave under CFRA "has opposed any practices forbidden" by FEHA.  (§ 12940, subd. (h).)

E.    *Torres Failed To Raise a Triable Issue of Fact as to Her FEHA Disability Discrimination Claims*

FEHA prohibits an employer from subjecting an employee to an adverse employment action based on the employee's protected status, including his or her physical disability. (§ 12940, subd. (a).)  To prevail on her FEHA discrimination claim, Torres needed to show "'(1) [s]he was a member of a protected class, (2) [s]he . . . was performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.'"  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067-1068, quoting *Guz, supra*, 24 Cal.4th at p. 355.)  Torres again argues she raised a triable issue whether Kaiser's reasons for denying her leave requests and terminating her were pretexts for disability discrimination, relying on the same evidence of pretext she offered to prove her

30

CFRA retaliation claim.  The trial court did not err in granting Kaiser summary adjudication of these claims.

As with Torres's FEHA retaliation claim, she has failed to present evidence raising a triable issue of fact whether Kaiser's proffered reasons were pretext for unlawful discrimination based on her physical or mental disability.  Torres did not present any evidence to show Kaiser's denial of her leave requests and later termination were motivated by discriminatory animus based on her shoulder injury or her stress and anxiety.  Although Sanchez and Sansano had knowledge that Torres took leave for her mental health in 2013 and a shoulder injury in 2014, there is no evidence Sanchez, Sansano, Yaller, or anyone else at Kaiser made derogatory comments about her conditions or evidenced discriminatory animus based on her disabilities.

F.     *Triable Issues of Fact Exist as to Torres's Wrongful Termination Claim Based on CFRA*

Torres contends the trial court erred in summarily adjudicating her claim for wrongful termination in violation of public policy.  "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm."  (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 154; accord, *Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.)  "The central assertion of a claim of wrongful termination in violation of public policy is that the employer's motives for terminating the employee are so contrary to fundamental norms that the termination inflicted an injury

31

sounding in tort." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 702; see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176.) Protected conduct includes exercising a statutory right or privilege. (*Yau*, at p. 155.) As discussed, Torres raised a triable issue whether Kaiser terminated her in retaliation for the exercise of her right to medical leave under CFRA.[12]

G. *Triable Issues of Fact Exist as to Torres's Declaratory Relief Claim*

To qualify for declaratory relief, a plaintiff must show "'(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party.'" (*Lee v. Silveira* (2016) 6 Cal.App.5th 527, 546; accord, *Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 934 ["'"'"The fundamental basis of declaratory relief is the existence of an actual, *present* controversy over a proper subject."'"'"'"].)

The trial court granted summary adjudication of Torres's declaratory relief claim because the claim was derivative of Torres's FEHA and CFRA claims. Because Torres has raised a triable issue of fact as to her CFRA retaliation claim, the trial court erred in granting summary adjudication of her declaratory relief claim.

---

[12] Because there is no triable issue as to Torres's FEHA claims, the trial court did not err in granting summary adjudication of Torres's claim for wrongful termination in violation of public policy based on FEHA.

H.    *Torres Failed To Raise a Triable Issue of Fact as to Her Punitive Damages Claim*

"In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff . . . may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, subd. (a).) "An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." (Civ. Code, § 3294, subd. (b).) The statutory term "managing agent" includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 566-567; accord, *Colucci v. T-Mobile USA, Inc.* (2020) 48 Cal.App.5th 442, 454 [substantial evidence supported jury award of punitive damages against corporation where corporation authorized supervisor to exercise substantial discretionary authority to override general corporate policies].)

Kaiser moved for summary adjudication of Torres's punitive damages claim based on the lack of evidence any officer,

33

director, or managing agent of Kaiser "committed, authorized, or ratified any act of fraud, oppression, or malice." Torres did not address punitive damages in her opposition brief, and the court ruled the issue was moot based on its other rulings.

On appeal, Torres argues summary adjudication of her punitive damages claim was error, contending her claim may be premised on her CFRA and wrongful termination claims. Kaiser renews its argument Torres lacks evidence any officer, director, managing agent of Kaiser authorized, ratified, or knew of the adverse employment actions taken against Torres. We agree Torres has failed to raise a triable issue of fact as to her punitive damages claim.[13] As Torres's attorney acknowledged at oral

---

[13] Torres urges us to allow the parties an opportunity to provide supplemental briefing on the issue of punitive damages because the trial court did not reach the merits of Kaiser's argument, relying on Code of Civil Procedure section 437c, subdivision (m)(2), which provides, "Before a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs." However, supplemental briefing is not appropriate where an issue was raised and briefed below and on appeal. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39 ["[S]upplemental briefing was not required in this case because the parties have already been provided 'an opportunity to present their views on the issue.'"]; *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7 ["We do not believe that supplemental briefing is required in this case since the issue was raised below and has already been briefed on appeal."].) Kaiser moved for summary adjudication of Torres's request for punitive damages and briefed the issue in the trial court and on appeal.

argument, she has presented no evidence Sanchez, Sansano, or Yaller was an officer, director, or managing agent of Kaiser, nor has she identified any officer, director, or managing agent of Kaiser who had any involvement in the adverse employment actions at issue in this case.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The trial court is ordered to vacate its order granting Kaiser's motion for summary judgment and to enter an order denying summary adjudication as to Torres's third (CFRA retaliation), fourth (wrongful termination in violation of public policy based on CFRA), and fifth (declaratory relief) causes of action. The trial court is to enter an order granting Kaiser's motion for summary adjudication as to the first and second causes of action (FEHA physical and mental disability discrimination, retaliation, and harassment), as well as Torres's claim for punitive damages. The matter is remanded for further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.          SEGAL, J.

---

Torres had an opportunity to brief this issue below and in her reply brief, but elected not to respond to Kaiser's argument.