Filed 4/30/21  Marsh v. City of Signal Hill CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TERRI MARSH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SIGNAL HILL,<br><br>    Defendant and Respondent. | B299228<br><br>(Los Angeles County<br>Super. Ct. No. BC663505) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark V. Mooney, Judge.  Affirmed.

Lyon Law and Geoffrey C. Lyon for Plaintiff and Appellant.

Pollak, Vida & Barer, Daniel P. Barer, Anna L. Birenbaum; Aleshire & Wynder, David J. Aleshire, Glen E. Tucker and Laura Walker for Defendant and Respondent.

————————————

Terri Marsh served as Finance Director of the City of Signal Hill (City) from December 2012 until she was terminated in March 2017. Following her termination, Marsh sued the City for disability and medical condition discrimination and whistleblower retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), as well as failure to accommodate and failure to engage in interactive process. The trial court granted the City's motion for summary judgment and entered judgment in its favor. We conclude Marsh failed to raise triable issues of material fact to support her FEHA discrimination and retaliation claims or whistleblower claims, and affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A. Marsh's Cancer Treatment and Hiring by the City

Marsh was diagnosed with cancer in September 2012, prior to being hired by the City. She underwent chemotherapy and radiation treatment from late October through December 2012.

On October 26, 2012, the City made Marsh a written offer of employment to serve as Administrative Services Officer/Finance Director (Finance Director), an at-will position.

Marsh informed the City she was undergoing cancer treatment and asked to delay her start until after her treatment concluded. The City declined her request, as it wanted her to overlap with her predecessor. The City manager told her she could take time off as sick days if she needed to.

Marsh began her position as Finance Director on December 14, 2012. At the time of her hiring she had been taking medication for mild depression for a number of years. Her doctor increased her dosage during her cancer treatment to address increased anxiety and depression related to her cancer

2

and treatment. Marsh told the then-City manager who hired her that she was being treated for anxiety and depression.

Her last cancer treatment was on December 20, 2012.

**B. Marsh's Employment at the City**

When Marsh began her employment with the City, she supervised six employees. By the second half of 2014 there was a staffing shortage and she requested additional staffing to deal with the workload. The City manager at the time instructed Marsh to take steps necessary so that the department functioned. In response, Marsh hired contract employees.

Marsh hired these contractors under the City's "emergency purchases" purchasing policy. Although the costs for the contractors exceeded the City manager's $15,000 spending authority without City Council approval, Marsh did not obtain City Council approval for the cost during the two years the City used the contractors and the $15,000 limit was exceeded.

In July 2014, Marsh asked the City for a four-week leave for surgery to prevent a recurrence of her cancer, which the City granted.

From 2014 to 2016, Marsh sometimes worked 48-hour shifts and estimated that she sometimes worked 1,400 to 1,600 extra hours per year due to low staffing in the finance department. Marsh was concerned that the stress from working so many hours would cause her cancer to return.

In March 2016, the City determined that an employee supervised by Marsh made errors in September 2015 that led to a discrepancy of $3.1 million in the City/Successor Agency financial statements.

In April 2016, Marsh reported to the City manager that certain City vendors had not been paying business license fees, in

3

violation of the municipal code. The City manager informed her that it was customary not to charge the City's vendors, and he did not see a reason to stop granting such waivers.

In May 2016, Marsh informed the City manager she was suffering from work-related stress from working so many hours and requested a reduction. Her request did not include any assertion that the reduction was needed as an accommodation of a disability. In response, the City manager told Marsh she was not required to work the hours that she had been working.

In June 2016, Marsh was notified she needed to obtain City Council approval for the contract employee expenditures.

During her tenure, three finance department employees complained about Marsh's supervision and/or behavior. On September 11, 2016, and November 12, 2016, City Account Manager Joy Getz filed harassment/retaliation complaints against Marsh.

In December 2016, Marsh received a fiscal year 2015–2016 performance evaluation rating her as "Below Standards" in the areas of judgment, quality of work, and leadership inspection. The evaluation cited her failure to obtain a council-approved contract for the consulting services her department had used since 2014 and for an accounting error that required a correction on the City/Successor Agency financial statements. Marsh's poor rating in judgment was attributed to not always considering available facts, resulting in some illogical decisions, and to her supervisors' tending to question and review her decisions. The review noted that her work product frequently reflected a lack of consideration for the factors of thoroughness, neatness, and accuracy, and that an undue amount of review of her work was necessary. As to leadership inspection, Marsh's review noted she

4

often did not recognize or correct problems. Based on the $3.1 million financial statement error, she was advised that she should improve her supervision of employees under her direction.

After her performance evaluation, the City manager also identified that Marsh neglected to make timely payments on past due invoices. The lack of timely payments resulted in supply delays. It also caused Costco and Smart & Final to freeze the City's credit accounts, and caused Long Beach Gas to issue shut-off notices. Marsh also did not verify the submission of the City's "check register" to Wells Fargo, causing checks to employees and to City Council members to bounce.

In late December 2016, Marsh removed a key to the City's server room where the City's financial information was kept without telling City Account Manager Getz. When Getz sent an e-mail expressing concern about the missing key, Marsh did not respond until after Getz had the door rekeyed and filed a police report.

On January 2, 2017, Marsh directed the City's Comprehensive Annual Financial Report (CAFR) to be published on the City's Web site. After City Council members expressed concern that most City departments were over budget, Marsh researched the CAFR with other City employees and realized there were several errors in the report.

On January 12, 2017, Marsh made a claim with the City's Human Resources Department alleging that Getz had created a hostile work environment.

### C. Marsh's Termination

On January 24, 2017, the City manager presented concerns about Marsh's credibility, leadership, and technical competence to the City Council. The City placed Marsh on paid

5

administrative leave the next day, pending an investigation and/or continued review of her performance.

Marsh refused to resign and/or accept a severance agreement in lieu of termination, and on March 7, 2017, she received notice that the City manager intended to recommend Marsh's termination.

On March 14, 2017, the City manager presented a performance evaluation and recommendation to the City Council that Marsh should be terminated. The council unanimously decided to terminate Marsh's employment.

On March 14, 2017, Marsh received notice that the City was terminating her employment as of March 15, 2017.

### D. Marsh Alleges She Was Terminated Because of Disability and Engaging in Protected Activity

On April 28, 2017, Marsh filed a complaint against the City with the California Department of Fair Employment and Housing (DFEH). She alleged that the City had taken adverse actions against her because of (1) a disability, (2) engagement in protected activity, (3) family care or medical leave, and (4) medical conditions. She claimed that the City was aware she had disabilities, "including anal cancer, anxiety, and related symptoms," but nevertheless denied her reasonable accommodations, "including time off work for recuperation and treatment." She also alleged that she suffered high blood pressure as the result of workplace stress and anxiety. DFEH served a copy of the complaint on the City and issued Marsh a Right to Sue Notice.

On May 31, 2017, Marsh sued the City. Her complaint alleged claims for (1) disability discrimination (first cause of action, Gov. Code, § 12940, subd. (a)); (2) failure to engage in good

6

faith interactive process to determine reasonable disability accommodation (second cause of action, *id.*, subd. (n)); (3) failure to reasonably accommodate disabilities (third cause of action, *id.*, subd. (m)); (4) retaliation for opposing FEHA violations (sixth cause of action, *id.*, subd. (h)); (5) failure to prevent discrimination, harassment, and retaliation (seventh cause of action, *id.*, subds. (j) & (k)); (6) medical condition discrimination (eighth cause of action, *id.*, subd. (a)); and (7) improper inquiry into disability (ninth cause of action, *id.*, subd. (f)). She also alleged whistleblower retaliation claims (fourth cause of action, Lab. Code, §§ 1102.5 & 1102.6; fifth cause of action, Gov. Code, § 8547 et seq.); and wrongful termination in violation of public policy (tenth cause of action).

**E. The City's Motion for Summary Judgment**

On December 28, 2018, the City moved for summary judgment or, in the alternative, summary adjudication.

The trial court granted summary judgment in favor of the City. In an oral ruling, the trial court explained that the discrimination and retaliation causes of action failed because the City had established a legitimate nondiscriminatory reason for Marsh's termination, based on her performance. The interactive process and accommodation causes of action failed for lack of evidence that Marsh had an impairment that required accommodation. The trial court also concluded that Marsh had conceded summary adjudication of her fifth and ninth causes of action and her punitive damages prayer (because punitive damages are not available against a public entity).

Accordingly, the trial court entered judgment for the City. This appeal followed.

7

## DISCUSSION

### A. Standard of Review

Summary judgment is proper when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a trial court's grant of summary judgment de novo, considering the evidence set forth in the papers, except that to which objections were sustained, and independently determine whether triable issues of material fact exist and if the moving party is entitled to judgment as a matter of law. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179 (*Husman*).) In so doing, we view the evidence in the light most favorable to the nonmoving party. (*Schachter,* at p. 618; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 470 [on appeal from an order granting summary judgment, "a reviewing court must examine the evidence de novo and *should draw reasonable inferences* in favor of the nonmoving party"].)

"When a defendant moves for summary judgment in a situation in which the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action." (*Husman, supra,* 12 Cal.App.5th at p. 1179–1180.) Or, the defendant may present evidence to " 'show[ ] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; see Code Civ. Proc., § 437c, subd. (p)(2).) " ' " 'The moving party bears the

burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish," ' the elements of his or her cause of action." ' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705; accord, *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720.)

If the moving party's initial burden has been met, "the burden shifts to the plaintiff to demonstrate, by reference to specific facts, not just allegations in the pleadings, there is a triable issue of material fact as to the cause of action." (*Husman, supra,* 12 Cal.App.5th at p. 1179, citing Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) "[S]ummary judgment cannot be granted when the facts are susceptible of more than one reasonable inference." (*Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378, 1392.)

**B. Governing Law**

Among other things, FEHA prohibits employers from terminating an employee because of a medical condition or physical disability. (Gov. Code, § 12940, subd. (a).) Under FEHA's retaliation provision, an employer may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under" FEHA. (*Id.*, subd. (h).) "Because the FEHA is remedial legislation, which declares '[t]he opportunity to seek, obtain and hold employment without discrimination' to be a civil right [citation], and expresses a legislative policy that it is necessary to protect and safeguard that right [citation], the court must construe the FEHA broadly, not . . . restrictively." (*Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 243; see Gov. Code, § 12993, subd. (a) [provisions of the statute " 'shall be construed liberally' "].)

To establish a prima facie case for unlawful discrimination, a plaintiff must provide evidence that "(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).) "Employees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action." (*Miller v. Department of Corrections, supra,* 36 Cal.4th at p. 472; accord, *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)

"Under FEHA medical condition and physical disability are separate bases for improper discrimination, each with its own statutory definition." (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 584.) Physical disability includes "[h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that" both affects one or more of the body's major systems and "[l]imits a major life activity." (Gov. Code, § 12926, subd. (m)(1)(A), (B).) Major life activity is "broadly construed" and includes working. (*Id.*, subd. (m)(1)(B)(iii).) FEHA protects individuals not only from discrimination based on an existing physical disability, but also from discrimination based on a potential disability or the employer's perception that the individual has an existing or

10

potential disability. (Gov. Code, §§ 12926, subd. (m)(4), (5), 12926.1, subd. (b).)

FEHA defines " '[m]edical condition' " as either "[a]ny health impairment related to or associated with a diagnosis of cancer or a record or history of cancer" or a genetic characteristic. (Gov. Code, § 12926, subd. (i)(1), (2); see also Cal. Code Regs., tit. 2, § 11065, subd. (d)(7) [" 'Medical condition' is a term specifically defined at Government Code section 12926, to mean either: [¶] (A) any cancer-related physical or mental health impairment from a diagnosis, record or history of cancer; or [¶] (B) a 'genetic characteristic' "].) Unlike the definition of physical disability, there is no requirement that a medical condition limit a major life activity in order to be protected.

An employer is entitled to judgment as a matter of law against an employee's FEHA discrimination claim if the employer sets forth competent, admissible evidence of reasons, unrelated to discrimination against the protected class, for the relevant employment action; and the employee fails to rebut that showing. (*Guz, supra,* 24 Cal.4th at pp. 357–358.) The same standard applies to retaliation causes of action: If the employer sets forth sufficient evidence of nonretaliatory reasons for the challenged decision, which the employee fails to rebut, the employer is entitled to summary judgment. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 75 [retaliation causes of action under Labor Code section 1102.5 and FEHA].)

### C. The City Established Legitimate Nondiscriminatory Business Reasons for Marsh's Termination

The summary judgment record demonstrates the City had legitimate, nondiscriminatory reasons for discharging Marsh that

11

were nonpretextual. The City established that over a period of time, unrelated to any discriminatory or retaliatory motive, it lost confidence in her performance and terminated her.

As a supervisor, Marsh was responsible for her department's accounting errors that resulted in a $3.1 million financial statement error and in the publication of the City's annual report with errors. Accounting errors in financial reports, as well as lack of oversight leading to unpaid bills and bounced checks, is a legitimate business reason for the City's loss of confidence in Marsh's ability to do her job as Finance Director. So is hiring contract employees outside of established budget parameters without the permission of the City Council. That three Finance Department employees she supervised made complaints against her also suggested that Marsh was ineffective as a manager.

The City thus successfully shifted the burden to Marsh to show that her termination was substantially motivated by impermissible bias or retaliation, and that the City's stated grounds for terminating her were a pretext for discrimination or retaliation. (See *Guz, supra,* 24 Cal.4th at pp. 357–358.)

**D. Marsh Failed To Raise a Triable Issue of Fact as to Whether Her Termination Was Substantially Motivated by Discriminatory Bias or Unlawful Retaliation**

Marsh failed to raise a triable issue of fact supporting the conclusion that the City actually discharged her in response to disability or medical condition, or in retaliation for complaints about prohibited actions. Doing so requires "evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's

actions." (*Guz, supra,* 24 Cal.4th at p. 361.) "The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive." (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159.) An employee may demonstrate pretext by showing " ' "the proffered reason had no basis in fact, . . . did not actually motivate the discharge, or, . . . was insufficient to motivate discharge." ' " (*Soria v. Univision Radio Los Angeles, Inc.*, *supra*, 5 Cal.App.5th at p. 594.) Pretext may also be inferred from the termination decision's timing, the decision-maker's identity, and the employee's pretermination job performance. (*Ibid.*)

Although "[r]etaliation claims are inherently fact-specific" (*Yanowitz, supra,* 36 Cal.4th at p. 1052), "an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination." (*Id.* at p. 1046.) "[C]omplaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Id.* at p. 1047; accord, *Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal.App.5th 1028, 1046.)

Here, Marsh provided no evidence of pretext beyond her own subjective beliefs. As the trial court concluded, "there was just no actual evidence of pretext, no evidence of anything that anybody said, any memo, any document." "[T]here was a lot of

13

material I read about how other people may have been at fault for some of these problems, that she did have some positive reviews in her performance, but . . . you need the evidence of pretext that . . . they really fired her because of either her medical condition or because of . . . the complaints she made regarding these fees." On appeal, Marsh fails to show otherwise.

**E. Marsh Failed To Raise a Triable Issue of Fact on Failure to Accommodate or Failure to Engage in the Interactive Process**

Marsh fails to show how her cancer history, anxiety, or depression was a limitation on her ability to perform her job that the City knew required accommodation. At most, she alleges that the City knew about her cancer history and her anxiety and depression, and that she raised concerns about overwork in 2016.

However, unless an employer is on notice of specific limitations caused by a disability or medical condition, an employee cannot prevail on a claim of failure to provide accommodation. (E.g., *Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 727, 739 [doctor's note that employee needed quiet place to work, and employee's request for accommodation for an unspecified learning disorder, failed to put employer on notice of the actual limitations his asthma and dyslexia caused].) Marsh fails to point to evidence raising a triable factual issue that during the relevant statute of limitations period—April 2016 to April 2017—she advised the City of any limitation to her ability to perform her job, caused by her cancer diagnosis or anxiety, that required an accommodation the City refused her. Rather, throughout her employment, Marsh was able to perform all essential functions of her job.

14

In her opening brief, Marsh concedes that "there were no physical manifestations of [her] cancer throughout the entire period of employment", she was given the time off she requested for surgery to prevent cancer recurrence, and her City medical file does not include any information about a medical condition or medical notes requesting accommodations for a disability.

Marsh contends that she requested reduced hours in 2016 as an accommodation because she was afraid her cancer might recur if she became too stressed. However, her request did not include any assertion that the reduction was needed as an accommodation of a disability, and she was informed that she was not required to work the hours that she had been working. She further argues that the City failed to accommodate her by not investigating or otherwise addressing alleged threatening comments from Getz, one of the employees in Marsh's department.

Marsh acknowledges that the City told her she was not required to work the hours that she had complained were excessive. And she does not point to any particular limitation on her ability to perform her job that Getz's alleged threats caused, or any particular accommodation that she requested as a result of those threats.

FEHA does not guarantee employees a stress-free or noncontentious working environment. (*Doe, supra,* 43 Cal.App.5th at p. 735.) " ' "Work places are rarely idyllic retreats." ' " (*Ibid.*) In particular, "relationships between supervisors and their subordinates can often be contentious." (*Id.* at p. 737.) As the City's Finance Director, the stresses of juggling major annual reports, day-to-day financial operations, and dealing with both superiors in the City and subordinates in her

15

department were inherent in such a high-level job. "FEHA was not designed to make workplaces more collegial; its purpose is to eliminate more insidious behavior like discrimination and harassment based on protected characteristics." (*Ibid.*)

**F. The City Did Not Omit Marsh's Deposition From the Record**

Marsh also contends as a procedural challenges to the trial court's grant of summary judgment that the City did not lodge, file, or serve volume I of her deposition. However, on September 7, 2018, the City filed a notice of lodging of volume I of the deposition transcript and video of Marsh, which Marsh does not dispute in her reply brief. Although portions of a deposition transcript lodged before a summary judgment hearing but not "introduced into evidence" are not part of the record on appeal (see, e.g., *Sacks v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 961–962), here the City put portions of the lodged transcript into evidence by citing portions in its separate statement.

## DISPOSITION

The trial court's judgment is affirmed.  The City of Signal Hill is entitled to its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P.J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.